549 A.2d 155

**Suzanne C. Shulman SONDER**

v.

**Carl R. SONDER, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 9, 1987.

Filed Sept. 29, 1988.

476

Catherine Miraglia–Lecky, King of Prussia, for appellant.

Howard J. Casper, Philadelphia, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, ROWLEY, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA and POPOVICH, JJ.

TAMILIA, Judge:

These cases were consolidated for appeal and certified to the Court en banc for review of a single issue, that being whether a property settlement agreement providing for the payment of support and incorporated into a divorce decree merged with the decree thereby becoming modifiable by the courts upon a showing of a material change in circumstances.

Suzanne Sonder and Carl Sonder were married on November 8, 1968, separated in 1982 and divorced on December 13, 1985. Two children were born of the marriage, a son M., born on May 25, 1970, and A., a daughter, born on November 28, 1973. The parties entered into a property settlement agreement (P.S.A.) on November 29, 1983, which included provisions for spousal and child support payments at the rate of $800 per week. Prior to entry of the divorce decree, the agreement was litigated and determined to be an enforceable contract (Order of March 27, 1985). Upon the issuing of the divorce decree, the agreement by its terms was to be incorporated into the decree without merging into it (Divorce Decree, December 13, 1985). The purpose for this is contested as the parties disagree as to whether it was to insure the survival of the agreement as an enforceable contract not subject to later modification by the court, or intended to become an Order of court subject to the control by the court over future payments, modified terms and enforcement. For purposes of clarity, we will consider each appeal in a separate section according to the issue presented.

## A. VALIDITY OF PROPERTY SETTLEMENT AGREEMENT

The first appeal, at No. 02259 Philadelphia, 1985, is from an Order denying exceptions to the Order of March 27, which affirmed the property settlement agreement entered into by the parties dated November 29, 1983. At the time of this action in equity for specific performance of the P.S.A., it had not been merged or incorporated into the

divorce decree, although a complaint in divorce had been filed by the plaintiff, Mrs. Sonder, on July 17, 1984, in Montgomery County, after which the defendant, Dr. Carl Sonder, filed a complaint in divorce in Chester County.

The complaint in equity was filed on October 16, 1984 and a hearing was set for January 28, 1985 on the equity complaint. The defendant, on Friday, January 25, 1985, filed a petition for preliminary objections nunc pro tunc and an answer to complaint in equity and new matter. On Monday, January 28, 1985, a hearing was held and, on March 27, 1985, the Honorable Albert Subers entered an Order denying appellant's petition to file preliminary objections nunc pro tunc and granted Mrs. Sonder's motion to enforce the property settlement agreement and directing appellant to comply with the terms of the P.S.A. *in total.* Exceptions were filed to this Order on April 8, 1985, with a petition for hearing en banc on the exceptions to the Order and a petition for leave to file additional exceptions. On June 20, 1985, argument on these exceptions was held before the en banc Court below at which time appellant moved to quash the proceedings and strike or rescind the Order of March 27, 1985. On June 20, 1985, appellant filed additional exceptions to the Order of March 27, 1985. On August 2, 1985, the trial Court en banc issued an Order denying appellant's exceptions to the Order of March 27, 1985. On August 28, 1985, appellant, Dr. Sonder, entered a praecipe for judgment and notice of appeal to perfect the instant appeal. Upon reviewing this record, we see nothing to disturb the decision by the trial court. *See Litwack v. Litwack,* 289 Pa.Super. 405, 433 A.2d 514 (1981) (court may not alter contract absent mistake or fraud without consent of both parties).

However, as to that appeal, the issue as to the validity of the agreement was rendered moot when appellant insisted the agreement be incorporated in the divorce decree, which was then accomplished by the decree dated December 13, 1985. *See K.L.H. v. G.D.H.,* 318 Pa.Super. 330, 464 A.2d 1368 (1983); *Commonwealth ex rel. Watson*

*v. Montone,* 227 Pa.Super. 541, 323 A.2d 763 (1974) (existence of actual controversy is essential to appellate jurisdiction and if event occurs rendering it impossible for appellate court to grant any relief, issue is moot). No appeal having been taken from the decree, the agreement is rendered valid and *incorporation* renders the issue res judicata as will be explained below.

### B. CONTEMPT ACTION ON UNINCORPORATED P.S.A.

The second appeal, No. 03025 Philadelphia, 1985, flows from appellee/wife's attempt to enforce the Order of March 27, 1985 (appeal at No. 02259 Philadelphia, 1985) directing appellant to comply with the terms of the P.S.A. Appellee, Suzanne Sonder, filed a petition for contempt of the March 27th Order and, following hearing before Judge Louis Stefan, on October 22, 1985, an Order was entered on October 24, 1985 adjudicating appellant in contempt and ordering him to pay the total sum of $29,800 "forthwith" and $1,000 counsel fees and expenses of enforcing the terms of the agreement. On November 22, 1985, appellant filed a Notice of Appeal to this Court from the Order of October 24, 1985 which is the instant appeal.[1]

---

1. It is noted that in each of the above Orders, while there were findings, first that the Agreement of November 29, 1983 was valid (No. 02259 Philadelphia, 1985) and second, that the appellant was in contempt for failure to pay the amounts accrued under that agreement (No. 03025 Philadelphia, 1985), as to enforcement, the first is moot and the second interlocutory as no sanctions were imposed and this Court cannot, therefore, rule on the appropriateness of the Order. *See Steel v. Weisberg,* 368 Pa.Super. 590, 534 A.2d 814 (1987); *McManus v. Chubb,* 342 Pa.Super. 405, 493 A.2d 84 (1985); *Commonwealth v. Koll,* 311 Pa.Super. 212, 457 A.2d 570 (1983); *Hester v. Bagnato,* 292 Pa.Super. 322, 437 A.2d 66 (1981) (unless sanctions are imposed, an Order declaring a party in contempt is interlocutory). In his Concurring and Dissenting Opinion, Judge Wieand would hold the Order appealable, but although it is a final amount determined, it was not reduced to judgment and execution attempted. While it is alleged with some merit by appellant that the court below had no jurisdiction to hear the case at No. 03025 Philadelphia, 1985, as the appeal was pending at No. 02259 Philadelphia, 1985, we need not consider that issue because of the manner in which we have resolved those appeals. As to the appeal at Nos. 01343 and 01423 Philadelphia, 1986, they

■ The substance of Dr. Sonder's argument is that the trial court, in the contempt proceeding at No. 03025 Philadelphia, 1985, did not give appellant an adequate or ample opportunity to develop his defense to the contempt proceeding because appellant's counsel was in the midst of another trial; exhibits necessary for his defense, corroborating his financial situation, could not be copied for submission to the trial court and the trial court issued its contempt Order before receiving these exhibits, although he represented to counsel he would take those matters under advisement. Further, appellant alleges the court failed to follow the procedure required in adjudicating him to be in contempt. While appellant refers to case law governing contempt, contempt for support matters generally follows the procedures under Rule 1910.21 of Pa.R.C.P., Actions for Support. That is so even when the matter is ancillary to a divorce proceeding. *See* Pennsylvania Divorce Code, 23 P.S. §§ 401(b), 403(a), 503 and Pa.R.C.P. 1920.31(b)(1). The effect of Rule 1910.21, Civil Contempt, streamlined the five elements required by *Crislip v. Harshman,* 243 Pa.Super. 349, 365 A.2d 1260 (1976). *See* Explanatory Note–1981 to Rule 1910.21. It requires notice by petition alleging failure to comply with extended notice to defend, which will include time and place of the hearing and consequence of failure to appear. The petition must also contain facts showing a willful failure to obey the support Order (here, contempt Order). This is followed by a hearing and appropriate Order. An Order imposing sanctions shall specify the condition of which fulfillment will result in release of the defendant. Rule 1910.21(c), (d). The proceeding employed was substantially as above except the appellant alleges he did not have a full hearing, as required, to present his defense, if any.

derive from the incorporated agreement in the divorce decree, which was unappealed and, pursuant to the test enunciated by the Supreme Court of the United States in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1948), those appeals are proper.

As indicated above at footnote 1, in the Order of October 24, 1985, while a finding of contempt was entered and an Order of specific performance imposed, no sanctions were imposed, therefore, this Court is powerless to grant appellant relief on that Order since he has yet to suffer harm or penalty. We, therefore, are unable to review his allegations of failure to consider his defenses, if any, and the trial court's procedural errors in conducting the hearing. Thus our only course is to quash the appeal at No. 03025 Philadelphia, 1985 as being interlocutory.

## C. INCORPORATION OF AGREEMENT INTO DIVORCE DECREE

These proceedings were moving forward on two fronts and at the point of the entrance of the divorce decree on December 13th, they converged. As stated earlier, a divorce complaint was filed by Mrs. Sonder on July 17, 1984 (reinstated September, 1984) in Montgomery County, while Dr. Sonder filed for divorce in Chester County. Appellant, in answer and counterclaim to Mrs. Sonder's divorce complaint, denied allegations of indignities and requested equitable distribution. On June 4, 1985, appellant filed an affidavit of consent under 23 P.S. § 201(c), and on June 5, 1985, appellee filed her affidavit of consent. On July 1, appellee filed a motion to transmit records under Montgomery County Local Civil Rules 1920.42(c) (conforming to Pa.R.C.P. 1920.42 and 1920.73 Praecipe to Transmit Record). This was countered by appellant's objections to the praecipe to transmit record because the praecipe contained a statement that the *agreement was not to be incorporated into the divorce decree,* whereas, in fact, the agreement itself contained an incorporation clause (Agreement, ¶ 17, p. 27). Following a hearing on the objection, an Order was entered finding moot Dr. Sonder's counterclaims to the complaint filed by Mrs. Sonder and directing plaintiff to file an amended praecipe to transmit record requesting a Form 2 Divorce Decree which included an Order incorporating the P.S.A. but not merging it with the decree.

Following this Order, a decree of divorce, using Montgomery County Form 2, was entered on December 13, 1985 and signed by Judge Joseph C. Smyth. This decree was never appealed and is valid and subsisting for purposes of any further proceeding on this case.

The entry of the decree of divorce incorporating the P.S.A., unappealed from, confirms the validity of the P.S.A. and the appeal at No. 02259 Philadelphia, 1985 contesting its validity is, as stated above, therefore, moot. This is so as by his action in insisting on incorporation of the P.S.A. into the decree, Dr. Sonder acknowledged its existence and validity. Since no appeal was taken from the divorce decree which incorporated the agreement, no issue remains as to the agreement's validity. The appeal at No. 02259 Philadelphia, 1985 is, therefore, dismissed.[2]

## D. MODIFIABILITY OF INCORPORATED AGREEMENT

The apparent strategy of Dr. Sonder was to have the P.S.A. become part of the decree, be merged with the decree and, thereafter, as an Order of court, be subject to review, modification and remission of arrears, pursuant to the alimony and support laws. In furtherance of that goal, when a third action for enforcement of the agreement was presented by Mrs. Sonder in a Petition for Contempt, filed January 3, 1986, to enforce the Order of October 24, 1985 (No. 01343 Philadelphia, 1986), it was countered by a petition to reduce and remit (No. 01423 Philadelphia, 1986). The Order in question on that appeal (No. 01423) is dated May 13, 1986, and dismisses the petition to reduce and remit "for at least two reasons." We undertake to review this appeal prior to considering the companion appeal at No.

---

**2.** Judge Wieand, in his Concurring and Dissenting Opinion, would find that the issue is not moot as Mrs. Sonder brought an action to compel Dr. Sonder to perform his agreement. As stated above, the validity of the agreement is the issue disposed of, which is different from enforcement or the ability of Dr. Sonder to pay which are appealable issues.

01343 Philadelphia, 1986,[3] as it will be dispositive as to both appeals.

Judge Salus heard preliminary argument from counsel regarding the appellant's petition and, after a lunch recess, dismissed the petition for lack of jurisdiction. On May 13, 1986, Judge Salus signed a written Order dismissing the petition for reduction and to remit arrears. It is from this Order the appeal at No. 01423 Philadelphia, 1986 was taken.

At the outset, it is clear that proceedings on the P.S.A. prior to the time of the divorce are governed by the law of contract and, if the agreement is valid, it is not subject to the remission of arrears and reduction of amount of payment as would be a support Order. As of December 13, 1985, the time the divorce decree was entered and the agreement was incorporated into it, any review must consider whether it is to be construed as a court Order and not an agreement.

The agreement, which is contained in the "Divorce Decree Form 2", a Montgomery County Court form, reads in the essential part:

> [A]nd it is further ordered and adjudged and decreed pursuant to Pa.R.C.P. 1920.1 et seq. and Act 26–1980, 23 P.S. § 1, et seq., the Divorce Code that the terms, provisions, and conditions of certain property settlement agreement between the parties dated November 29, 1983, and attached to this decree and Order as exhibit A is hereby incorporated into this decree and Order by reference as fully as though the same were set forth at length. Said agreement shall not merge but shall survive this decree and Order.

This Decree was signed by Honorable Joseph A. Smyth.

The issue presented is whether the agreement, having been incorporated, is now subject to modification by the court as an alimony or support Order entered through the

---

3. The appeal at No. 01343 Philadelphia, 1986, is from an Order of May 13, 1986, finding the appellant in contempt of the support agreement and ordering him to pay $10,000 forthwith on that agreement or be committed to jail for 90 days.

court and not as an agreement. Upon his review of the agreement, and after hearing argument from counsel, Judge Salus declined to hear the petition for arrears and reduction and dismissed them, alleging a lack of jurisdiction. A review of the argument and discussion of the parties with the court on the record, which is the only information available to us, does not divulge the reason for the trial court making that decision.

For the reasons stated below, we believe the trial court was correct in dismissing the petition as it did not have jurisdiction to hear that petition.

Since the Divorce Code of 1980, confusion has been engendered by the attempt to equate support agreements which are contracts with support Orders which are creatures of statute. Since the two are enforceable in distinct fashions and are governed by clearly distinguishable principles of law, the attempt to homogenize these principles into a unitary concept, which creates a third entity not envisioned by the law, must fail. In that entity, the elements of contract apply to the binding and non-modifiable aspect of the agreement and serve to create a debt, whereas the elements of a support Order apply to means of enforcing the agreement. The agreement sub judice, if so interpreted, creates an instrument which is unenforceable. Accordingly, we must look to the intent of the parties as manifested by the language of the contracts to give it legal effect.

The distinction between contract and statutory concepts was detailed in *Hollman v. Hollman,* 347 Pa.Super. 289, 500 A.2d 837 (1985) (rev'd and remanded on other issues) 515 Pa. 288, 528 A.2d 146 (1987), which we quote as follows:

### A.—*Support Orders*

A support or alimony order is a creation of statute and an incident of the marriage which is enforceable by operation of law. *Commonwealth ex rel. Smith v. Smith,* 260 Pa.Super. 203, 393 A.2d 1224 (1978). Proceedings relative to such orders contain due process requirements, evidentiary findings and involve scrutiny by the court as to their validity, subject to appellate review. In

return for this closely proscribed legal proceeding with its attendant safeguards and judicial findings, the legislature has extended the powers to bring about compliance by granting courts the right to attach property and wages and to incarcerate willfully delinquent obligors. A further extension of this power is the right to modify the order or vacate the arrears upon a showing of changed circumstances, 23 P.S. § 501(e), and in furtherance of the process, provides that the court will have domestic relations sections and personnel to receive, disburse and monitor payments. 23 P.S. § 504. *See* Support Proceedings, 42 Pa.C.S.A. § 6701 et seq., as superseded by Pa.R. C.P. 1910, Actions for Support; Revised Uniform Reciprocal Enforcement of Support Act (1968), 42 Pa.C.S.A. § 6741 et seq. Thus, upon analysis, it is apparent that extraordinary attributes and conditions are attached to support and alimony orders, which become instruments of the court, and not subject to the control of the parties. Were we to make the enforcement of support agreements equivalent to the enforcement of support or alimony orders, then the full panoply of enforcement means would become available, including jailing for contempt. Thus, a person could be jailed on an obligation which never passed the due process accorded to court orders and is not subject to constant review for modification for change of circumstance or ability to pay.

### B.—*Support Agreements*

By comparison, agreements, whether they be separation, antenuptial, postnuptial or support, are instruments of contract in which the court has no involvement. None of the elements of due process, court review and appealability are involved in agreements such as these, which are private undertakings between two parties, each having responded to the 'give and take' of negotiations and bargained consideration. As such, they are governed by the law of contracts. *Steuart v. McChesney*, [498 Pa.Super. 45, 444 A.2d 659 (1982)], *Brown v. Hall*, [495 Pa. 635, 435 A.2d 859 (1981)], *Litwack v. Litwack*, [289

Pa.Super. 405, 433 A.2d 514 (1981) ], *VanKirk v. Van-Kirk*, 336 Pa.Super. 502, 485 A.2d 1194 (1984). This means, of course, they are not modifiable unilaterally; a court cannot remake or modify such an agreement as it would be the taking of property without due process of law. Also, such an agreement is solely enforceable by an action in assumpsit [or equity-specific performance]. *Brown, [supra], Commonwealth ex. rel. Jones v. Jones* [216 Pa.Super. 1, 260 A.2d 809 (1969) ], *Cavazza's Estate* [169 Pa.Super. 246, 82 A.2d 331 (1951) ], *Exner v. Exner* [268 Pa.Super. 253, 407 A.2d 1342 (1979) ]. Since they are not court orders, the extraordinary powers flowing from a court order are not available. To jail a person for failing to pay on his agreement (which created a debt) is prohibited by our constitutions, state and federal, as imprisonment for debt. Clark, *Law of Domestic Relations*, Ch. 16.12, p. 554 (1968).

A careful reading of all the cases clearly indicates there has never been any intent to foster an interpretation of the law whereby contracts and statutory provisions may be applied interchangeably or the non-modifiability of contract be engrafted on a support Order; rather, the contrary is quite evident. *Brown v. Hall*, 495 Pa.Super. 635, 435 A.2d 859 (1981) clearly provided that support agreements which were intended to survive a decree of divorce were enforceable in equity both as to past and future payments of support under the agreement. It was therein also provided that a subsequent reduction in support, through the imposition of a court-imposed support Order, did not abrogate the contract. Subsequently, in *Millstein v. Millstein*, 311 Pa. Super. 495, 457 A.2d 1291 (1983), this Court held that while a support agreement could not be reduced by a subsequent support Order, a subsequent support Order could be used to increase payment for support of a child as the parties could not, by agreement, deny the child reasonable support. The court, however, should consider a separation agreement in setting spousal support and child support if the agreement is voluntary and both parties had counsel. *Borrell v. Borrell*, 346 Pa.Super. 1, 498 A.2d 1339 (1985). There

appears to have been no change in the law as has been pronounced by *Silvestri v. Slatowski*, 423 Pa. 498, 224 A.2d 212 (1966), that where an agreement did not merge into the court Order, although ratified by the divorce decree, the amount of support agreed upon can be enforced in equity by specific performance according to the terms of the contract. It pointed out that in *Colburn v. Colburn*, 279 Pa. 249, 123 A. 775 (1924), attachment of the person could not issue in this type of case. Subsequently, in *Tokach v. Tokach*, 326 Pa.Super. 359, 474 A.2d 41 (1984), this Court held there is no statutory basis upon which incorporation could be distinguished from merger. *Tokach* held the incorporated agreement merged with the divorce decree and, therefore, became enforceable as an Order of court and was modifiable. *Also see Lee v. Lee*, 352 Pa.Super. 241, 507 A.2d 862 (1986). *McGough v. McGough*, 361 Pa.Super. 391, 522 A.2d 638 (1987) was distinguished from *Tokach* in that it held specific language in *McGough* provided for incorporation but not merger. This meant the contact would be enforced according to its terms and was not modifiable since it was not superseded by merger into an Order of court.

 To bring about the clarification of this issue, we return to the statute which permits merger of agreements into divorce decrees to be entered as court Orders. The basis upon which the court has the capacity for enforcement of support Orders relating to children, incorporated into a divorce decree, is found in 23 P.S. § 401 Decree of Court. Therein, section (b) in pertinent part states:

> (b) Any decree granting a divorce or an annulment, shall include ... an order or orders determining and disposing of existing property rights and interests between the parties, custody and visitation rights, child support, alimony and any other related matters including the enforcement of separation agreements voluntarily entered into between the parties.

A reading of this section makes no distinction between incorporation and merger and simply provides for "an order

or orders ...including enforcement of separation agreements voluntarily entered into between the parties." By this language, it was not intended the court be placed in a position where it would enforce agreements in any fashion other than provided by contemporary law, relying on the law as it had developed until the time of the Divorce Code. In reality, this agreement combines a property settlement agreement and a separation agreement.[4] It is clear contractual obligations are enforced according to the assumpsit and equity principles of law and support Orders are enforced in accordance with statutory provisions of law. The Divorce Code goes one step further in providing for merger of alimony agreements. In section 501(f) Alimony, it states:

(f) Whenever the court shall approve an agreement for payment of alimony voluntarily entered into between the parties, such agreement shall be deemed the order of the court and may be enforced as provided in section 503.

In 23 P.S. § 501(e), the Code provides:

(e) Any order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon such order may be modified, suspended, terminated, reinstituted or a new order made.

It is incontrovertible that an agreement subject to a section 501(f) Order, is an "order entered pursuant to this section." Such an agreement is no longer enforceable as a contract but is subject to the full range of modification and change permitted to court Orders under section 501(e). It is also subject to enforcement provisions provided by section 503,

---

4. These cases involve a hybrid separation agreement and property settlement. A separation agreement concerns itself only with support and under certain circumstances is modifiable. A property settlement settles property rights and says nothing about support and is generally recognized as being immune from modification. A third type is the hybrid, as here, in which both property rights and questions of support and custody are settled. In such an agreement, it is generally recognized that the ability to modify the support provisions depends upon the interrelation of property settlement provisions and support provisions. *See* 61 A.L.R.3d Modification of Divorce Decree § 2(a).

Enforcement of arrearages.[5] For an Order voluntarily entered into to be enforced as a court Order, the language of the decree must clearly state the agreement is merged with the decree. Otherwise, it remains a contract which is enforced as is any other contract in law or equity.[6]

Since a property settlement/separation agreement can encompass any of the varied and multiplicity of marital disputes, enforcement is in accordance with the law as it developed in each category of marital proceedings. The agreement could well contain conditions relating to equitable distribution, marital property, terms concerning visitation and custody matters, as well as alimony and support. In construing these matters, the court is given full equity powers to bring about a proper resolution of any disputes which may arise under the agreements. While the agree-

5. Section 503, in order to effect payment of arrearages, permits the court to: 1) enter judgment; 2) take and seize personal property and collect of rents and profits of real estate; 3) attach up to 50 per cent of wages; 4) award interest on unpaid installments; 5) require security to insure future payments; 6) issue body attachment and incarceration for willful failure to comply with court order and jail for civil contempt up to six months. Judge Beck would treat the incorporated agreement as a merged agreement for purposes of enforcement, but not modifiability. She alleges the authority for this is found in Section 401, Decree of Court, 1980 Divorce Code, because of the broad language there. The above discussion clearly delineates the extent of enforcement under varying circumstances. Contracts are to be enforced under assumpsit and equitable principles, court Orders, pursuant to legislative authorization. Judge Beck points to the February 1, 1988 amendment to the Divorce Code, Act 13, a newly added section, 401.1, as authority for her position. To the contrary, it eliminates the confusion engendered by the use of the terms merger and incorporation and treats all agreements, whether incorporated, merged or not, the same as a court Order for enforcement purposes. It eliminates modifiability, unless agreed to by the parties, as to property rights, alimony and counsel fees, but provides: "b) A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances." Many of the problems presented by this case are resolved by the long overdue legislation, but there still remains to be a determination whether incarceration for failure to pay on a contract action meets constitutional requirements against imprisonment for debt.

6. Judgment would be enforced as provided by Pa.R.C.P. 3001 to 3011 and 3101 to 3149 inclusive; and Pa.R.C.P. Equity Actions, Rule 1501 et seq.

ments relating to property matters might be strictly enforced according to their terms and be non-modifiable, it is inconceivable that agreements relating to visitation, custody and support should be so binding as to be irreversible when the interest of justice and the best interests of the child require otherwise. The court cannot be bound to enforcement of agreements which produce inequitable results when conditions change and as the status of the parties is altered in relation to each other over the passage of time. This, however, is subject to the proviso that property rights and support rights may be so intertwined as not to permit modification as to either. By drawing an agreement so it purports incorporation without merger, the parties may not carve the agreement in stone so that it is unalterable while imposing an obligation on the court to enforce Orders which may not be enforceable through contempt and attachment powers.

 We, therefore, hold that any agreement which speaks of incorporation but rejects merger was intended by the parties not to be brought under the provisions of sections 401, 501(e) and (f) and 503 for the enforcement of separation agreements. Only by an Order which does not reject merger, or requires court enforcement of the agreement, does it become part of the decree and have the effect of an Order. By renouncing merger and failing to have language in the decree requiring enforcement as a court Order, the contract survives. In doing so, the parties reject the benefit of the provisions developed under the Divorce Code and the divorce procedures enunciated in the Civil Procedural Rules for contempt, attachment and payment of alimony on divorce. They do, however, avoid the law relating to recision of arrears or modification based on need, whether there be a need for an increase in the support Order or a modification downward as the circumstances would require. Notwithstanding, visitation and custody matters will be enforced according to the best interests of the child and as with support Orders, advisory effect will be given to the agreement but without binding effect on the

court when it is not in the best interest of the child. As to equitable distribution, the agreements will be enforced according to their terms so long as law and equity permit. *See* footnote 3, *supra.*

Therefore, should the parties desire to have the agreement inflexible and binding only as a contract, merger is not the proper procedure. However, such contracts and agreements, in addition to actions in assumpsit, are still enforceable in equity by specific performance although they do not have the remedies available for enforcement of support Orders. The advantage of incorporation (without merger) is to give the agreement the finality of res judicata.

For us to hold that the fiction of incorporation without merger provides statutory enforcement of the contract would be to impose on the courts a burden which they cannot sustain. A decree of court, like any other Order, is subject to statutory rules which may be totally inconsistent with the intent of the parties in a contractual undertaking. By having an Order of court, which is, in effect, dictated by the agreement between the parties, they abrogate the statutory rules governing such decrees. A full analysis of this matter is stated in *Johnston v. Johnston*, 297 Md. 48, 465 A.2d 436 (1983). There, quoting the Supreme Court of Arizona in *McNelis v. Bruce*, 90 Ariz. 261, 367 P.2d 625, 631 (1961) (en banc), the *Johnston* court said:

> It is the rule that mere approval of a property settlement in the divorce decree does not operate to make it a part of and enforceable as a decree. If the language of the agreement shows an intent to make it part of the divorce decree and the agreement is actually incorporated in the decree, the provisions of the agreement may be enforced as an order of the court. As soon as a property settlement agreement is incorporated into the decree, the agreement is superseded by the decree and obligations imposed are not those imposed by contract but are those imposed by the decree since the contract is merged in the decree. (Citations omitted.)

*Id.* 297 Md. at 53–55, 465 A.2d at 439. The language of the agreement in *McNelis* was similar to that of the one in *Johnston* and the one in the present case. That language stated:

This agreement shall be offered in evidence in such action and if acceptable to the court shall be incorporated by reference in any decree that may be granted herein. Notwithstanding such incorporation, this agreement shall not be merged in the decree but shall survive the same and shall be binding and conclusive upon the parties for all time.

As to the intent of the parties, one of two intents may be derived from the language of the agreement. First, is that the agreement is approved by the court so the terms become res judicata and not subject to collateral attack, but do not merge; or, second, they merge and become part of the court Order and, therefore, enforceable as any other court Order. In the instant cases, the fact the agreement speaks specifically about not merging in the decree would indicate the parties intended that the court approve the contract to establish its validity only and it not be part of the decree for enforcement purposes. For purposes of this case, and adopting the analysis of the *Johnston* and *McNelis* cases, incorporation with the provision for non-merger simply establishes the validity of the agreement as being res judicata and for enforcement as a contract and not as an Order of court pursuant to the decree.

The enforcement provisions of the Divorce Code and the support law, therefore, do not apply and the agreement may not be modified or arrearages remitted. Had the language required incorporation alone, the logical inference would be the parties intended merger and the laws of support and alimony Orders would apply. For the above reasons, the trial court properly dismissed the petition for reduction and remission as he had no authority to alter a valid agreement entered into by the parties. Therefore, the Order at No. 01423 Philadelphia, 1986 is affirmed.

## E. CONTEMPT PARAMETERS ON AGREEMENTS

This leaves us to the resolution of the appeal at No. 01343 Philadelphia, 1986, in which the trial court, under Order dated May 13, 1986, found defendant in contempt and ordered payment of $10,000 forthwith or commitment to jail for 90 days.

There is no question this is an appealable Order as a final contempt Order was entered after hearing in compliance with *Crislip, supra.* The appellant contends the court below erred in holding him in contempt because it ignored a valid defense of inability to pay and that incarceration is not an appropriate sanction for failure to comply with a support agreement.

As to the first issue, a thorough review of the record and testimony of the parties leads us to conclude the evidence, presented by appellee as to appellant's ability to pay and that of the appellant in his defense, will not support the contempt finding. There is no contempt in refusing to obey an Order when the alleged contemnor, without fault, is unable to comply with it. *Grubb v. Grubb,* 326 Pa.Super. 218, 473 A.2d 1060 (1984). To enforce a support agreement through an equity action and decree of specific performance by a finding of contempt and imposition of sanctions which include incarceration, the evidence presented must establish beyond a reasonable doubt the willful non-compliance with the decree of specific performance, despite the ability to do so. The general rule in civil contempt cases is that the complaining party "has the burden of proving non-compliance with the court Order (for specific performance) by a preponderance of the evidence, and that present inability to comply is an affirmative defense to be proved by the contemnor." *Barrett v. Barrett,* 470 Pa. 253, 263, 368 A.2d 616, 621 (1977); *In Re Grand Jury,* 251 Pa.Super. 43, 53, 379 A.2d 323, 327 (1977).[7] The trial court, in imposing the

7. Contempt proceedings are properly characterized as civil or criminal on the basis of relief granted, not purposes underlying that relief or label given proceedings by state law. Relying on *Gompers v. Bucks*

*Stove and Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911), in *Hicks v. Feiock*, the United States Supreme Court recently stated:

> The character of the relief imposed is thus ascertainable by applying a few straightforward rules. *If the relief provided is a sentence of imprisonment, it is remedial if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order,' and is punitive if 'the sentence is limited to imprisonment for a definite period.'* *Id.* at 442, 55 L.Ed. 797, 31 S.Ct. 492 [at 498]. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order. *These distinctions lead up to the fundamental proposition that criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt.* See, *e.g., Gompers, supra,* at 444, 55 L.Ed. 797, 31 S.Ct. 492 [at 499]; *Michaelson v. United States ex rel. Chicago, St. P., M. & O.R. Co.,* 266 U.S. 42, 66, 69 L.Ed. 162, 45 S.Ct. 18, 35 ALR 451 (1924).

*Hicks v. Feiock,* —— U.S. ——, 108 S.Ct. 1423, 99 L.Ed.2d 721, 731–32 (1988) (footnote omitted). In *Hicks,* the California Court proceeded to find a defendant in contempt for failing to pay a support Order when it was *presumed* he had the ability to do so. The jail orders were definite in term and it was unclear whether he would be released from jail upon compliance. The Supreme Court remanded to have it determined whether this was criminal or civil. If the term was fixed, it was criminal, if release upon payment, it was civil.

The United States Supreme Court states:

> The proper classification of the relief imposed in respondent's contempt proceeding is dispositive of this case. As interpreted by the state court here, § 1209.5 requires respondent to carry the burden of persuasion on an element of the offense, by showing his inability to comply with the court's order to make the required payments. If applied in a criminal proceeding, such a statute would violate the Due Process Clause because it would undercut the State's burden to prove guilt beyond a reasonable doubt. See, *e.g., Mullaney v. Wilbur,* 421 U.S. 684, 701–702 [95 S.Ct. 1881, 1890–1891, 44 L.Ed.2d 508] (1975). If applied in a civil proceeding, however, this particular statute would be constitutionally valid, *Maggio v. Zeitz,* 333 U.S. 56, 75–76 [68 S.Ct. 401, 411, 92 L.Ed. 476] (1948); *Oriel, [v. Russell],* 278 U.S., [358] at 364–365 [49 S.Ct. 173, 174–175, 73 L.Ed. 419 (1929)] and respondent conceded as much at the argument. Tr. of Oral Arg. 37.[9]

*Id.* —— U.S. at ——, 108 S.Ct. at 1432–1433, 99 L.Ed.2d at 735 (emphasis added).

9. Our precedents are clear, however, that punishment may not be imposed in a civil proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order. *United States v. Rylander,* 460 U.S. 752, 757, 75 L.Ed.2d 521, 103 S.Ct. 1548[, 1552] (1983); *Shillitani [v. United States,* 384 U.S. 364] at 371, 16 L.Ed.2d 622, 627, 86 S.Ct. 1531[, 1536 (1966)]; *Oriel,* 278 U.S., at 366, 73 L.Ed. 419, 49 S.Ct. 173 [, at 175].

sanction of immediate payment of $10,000 or commitment for 90 days, heard the evidence concerning appellant's financial circumstances, including changes in those circumstances which would effect his present ability to pay, without giving that evidence any weight. It appears that because appellant voluntarily entered into the agreement and the agreement is valid, as indicated above, the trial court took the position there was little or no change in income from the time of the agreement to the time of the contempt hearing and, therefore, appellant had the ability to pay and would be in willful contempt of the Order if payment was not immediately made.

From the trial court Opinion, it is evident the court gave no credence to appellant's testimony. At the outset of the hearing, after finding appellant in contempt, the trial court appeared predisposed to impose sanctions based on a previous finding of Judge Stefan. He properly agreed to go forward with testimony to permit appellant to interpose a defense of inability to pay. It appears the trial court assumed that if income had not substantially changed from the time of the agreement to the time of the contempt hearing, there could be no defense. Appellant maintains there was never adequate income to perform the agreement which was the reason he unilaterally reduced payment, in May 1984, from $800 to $400 per month after approximately six months payment at the $800 level. Thus the fact his income level had not substantially changed, and to some extent appeared to be improving at the beginning of 1986 at a moderate rate due to liquidation of a family-medicine practice and greater concentration on a psychiatric practice, according to the court, the inability to pay an Order of $800 per week was not established. From the evidence presented in this case, even allowing for puffing of business expenses and the possibility (not proven) of unreported fees, the record fails to establish beyond a reasonable doubt that the appellant can pay the Order in full and is in willful non-compliance with the contempt Order. *See Barrett,*

*supra;* [8] *Durant v. Durant,* 339 Pa.Super. 488, 489 A.2d 266 (1985); *Commonwealth ex rel. Heimbrook v. Heimbrook,* 295 Pa.Super. 300, 441 A.2d 1242 (1982) (in imposing a coercive sentence upon a finding of civil contempt, the court must be convinced beyond a reasonable doubt that the contemnor has the ability to purge himself).

The procedural posture of these cases tended to force the conclusion the appellant was in willful non-compliance. At the outset, as indicated above, the first proceeding tested the validity of the agreement (No. 02259 Philadelphia, 1985), when in fact appellant wished to contest his ability to pay. Once the agreement was held to be valid, with no change in circumstances, the subsequent hearing focused on the lack of change to support the finding of contempt for non-payment, and on limited evidence, held there was ability to pay (No. 03025 Philadelphia, 1985). The present proceeding (No. 01343 Philadelphia, 1986), buttressed by the two earlier hearings, resulted in a determination the evidence as to inability, though substantial, was not credible and resulted in a finding of willful non-compliance with the earlier contempt Order. Throughout, the appellant has maintained, and established with some conviction, his inability to pay the amount to which he agreed. While a party may agree to conditions in a contract, which in actuality he is unable to perform, this does not invalidate the contract. He may, however, have a valid defense to a contempt action for non-payment. This appears to be the case here. This agreement, as to the husband, was uncounselled, which is possibly the root of the problem, although binding because he had the opportunity to obtain counsel.

The agreement entered into requires the appellant to:

8. We now hold, however, that where, as here, the court in civil proceedings finds there has been willful noncompliance with its earlier support orders constituting contempt but the contemnor presents evidence of his present inability to comply and make up the arrears, the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced *beyond a reasonable doubt,* from the totality of the evidence before it, the contemnor has the present ability to comply. *Barrett* 470 Pa. at 263–64, 368 A.2d at 621.

1. pay all bills incurred prior to the separation agreement;
2. pay $800 per week for support of the two children until oldest child's graduation from high school; reduces to $400;
3. payment to wife shall terminate when the youngest child begins a course of post-high school education or graduation from high school;
4. wife's employment or earnings shall not be a basis for modification and/or reduction in payment under the agreement;
5. he can claim children as dependents *if* no *defaults;*
6. appellant is responsible for payment of tuition and college expenses;
7. appellant is responsible for yearly campership for each child at cost of approximately $3,000 each;
8. wife to receive net proceeds from sale of residence.

The evidence presented by appellant to establish his defense as to inability to comply with the agreement may be summarized as follows. In November 1983 through December 1985, appellant had a family practice which, according to his patient visit books, serviced a high of 269 patients per month to a low of 110 per month when it was terminated as a failing business. His private psychiatric practice averaged 17 patients per month between November 1983 and February 1986. Only in the two months prior to the hearing was there a substantial increase; in March 1986, it was 32, and in April, it was 44. Dr. Sonder testified time would never permit more than 44 patients per month. His business deductions included standard expenses such as employee salaries, rent, utilities, insurance, parking, automobile rental, drug and lab expenses. Allowing these expenses against gross income for the first year of the agreement (11/83–11/84) and including the salary received from Bryn Mawr Hospital ($2,166 per month), the total gross income for that period was $112,262 (this figure is different than testified by appellant as different months were used; the

figures are drawn from appellant's recapitulation submitted on the record). The business expenses during that period totalled $65,570. Other business related expenses totalled $6,086 for a combined total of $71,656. Taking appellant's figures at face value, the gross income, without considering taxes and living expenses, available to pay support was $40,606 during the year following the agreement. During that period (11/83–11/84), he paid $32,400 toward support and $4,000 toward the camperships, or $36,600. The agreement called for payment of $41,600 and $6,000 in campership expenses, or $47,600.

Taking the evidence presented by the appellant for the period when he gave up the family practice and focused on the psychiatric practice, while the data is limited, by projecting those figures for the coming year, the anticipated income would be: contract with Northeastern Hospital, $2,640/month; Bryn Mawr, $2,166/month; psychiatric practice (average 30 patients per month at $75 per visit equals $2,250/month, totals $7,056/month or $84,672/year. Appellant's own projection given in testimony was $72,150 per year. Business expenses were considerably less as he had no employees and reduced rent and, according to appellant, projected for the following year to approximately $22,604. His gross income before taxes and without consideration of living expenses would be $49,556. Taxes would further reduce this amount by $17,567 to $32,000, according to appellant's figures. With our higher estimate of income, the net, after taxes, would still not exceed $44,000. Thus, despite reducing his business expense by giving up the family practice while obtaining a second contractual position with Northeastern Hospital and focusing on increasing the psychiatric practice, appellant still will produce substantially less income than needed to fulfill his obligation of $47,600 under the agreement.

Appellee hints or alleges that while living together and while she handled the books, there was an unspecified amount paid in cash through the family practice that did not appear on the books. Appellant did acknowledge he re-

tained amounts of $100 to $250 per week that did not get deposited, but which were reported for income tax purposes and which are accounted for in his patient visit books. To account for maintaining the standard of living which the agreement sought to replicate, appellant alleges he received frequent gifts ($1,500 per month), including one of $10,000, from appellee's father, as well as a loan of $51,000 to establish the family practice. According to him, the family was constantly on the verge of default. After the separation, appellant testified he was able to sustain himself and the amount paid in support by loans from friends ($7,000 from Dr. Zois; $8,000 from Janet Azar), liquidation of the family practice and sale of its equipment and furnishings and going into debt. In further support of this position, he presented testimony and evidence that he filed for bankruptcy in December 1985, claiming $112,000 in debts for business and personal expenses.

Unquestionably, various items of expenses and income may be disputed but it appears from a close examination of the record that whether from appellant's figures or an independent calculation of the income and expenses from undisputed evidence presented on the record, appellant was and is incapable of paying $47,600 yearly and is presently incapable of paying $10,000 toward the arrears on the agreement.

The trial court relied on *Hopkinson v. Hopkinson*, 323 Pa.Super. 404, 470 A.2d 981 (1984) as authority to impose a jail sentence for contempt for non-payment under the agreement. We hold *Hopkinson* not to be applicable. There, it was determined the appellant had the ability to pay at least some part of the agreement but failed to pay anything. Here, appellant paid according to his ability. We also have serious doubts that *Hopkinson* is a correct statement of the law. There, the trial court imposed a sentence of weekend incarceration, pursuant to the Divorce Code, in what appeared to be a merged agreement. This Court held the merger concept was not applicable as the agreement had been entered in February, 1978, prior to the

effective date of the Divorce Code. The court then affirmed the trial court on other grounds, holding it was a proper exercise of judicial power to enforce compliance with its Orders if its purpose is to compel performance and not to inflict punishment. In support of this proposition, the *Hopkinson* Court cites numerous cases, none of which has to do with imposition of incarceration for failure to pay on a support agreement after a contempt finding. Our exhaustive research discloses no Pennsylvania case, aside from *Hopkinson,* which permits incarceration for non-payment of support pursuant to an agreement. (It is treated as an agreement although a consent decree; *see infra* p. 506.) The last definitive pronouncement in that regard was *Colburn v. Colburn,* 279 Pa. 249, 123 A. 775 (1924). There, the Supreme Court, in a Per Curiam Opinion, stated:

The question before us is the power of a court of equity to enforce its decree for the payment of money due under a separation agreement by attachment of the person of the defaulting husband. Section 1 of the Act of July 12, 1842, P.L. 339, provides: 'No person shall be arrested, or imprisoned on any civil process issuing out of any court of this Commonwealth, in any suit or proceeding instituted for the recovery of any money due upon an judgment or decree founded upon contract, or due upon any contract, express or implied, or for the recovery of any damages for the nonperformance of any contract, etc.' Here plaintiff's bill is founded upon a contract and the decree is for the payment of money. While it is admitted equity has jurisdiction in separation agreements, it is denied that decrees for payment of money in such proceedings are enforceable by attachment of the person. This court has held that attachment in such cases does not lie. In *Pierce's Appeal,* 103 Pa. 27, 29, it is said: 'The statute applies alike to all judgments at law and to decrees in equity, and prohibits arrest in every case upon contract which is not included in the exceptions. Where it applies, an attachment cannot be lawfully issued, for the party shall not be arrested and put to his answer to the satisfaction of the judge or chancellor, that he is unable

to pay the judgment or decree, under pain of imprisonment. The object being to prevent oppression of debtors in furtherance of that end, it should be liberally construed.'

*Id.*, 279 Pa. at 250–251, 123 A. at 775–76. *Pierce's Appeal*, 103 Pa. 27 (1883) and *Colburn* rely on the Act of July 12, 1842, P.L. 339, which prevents imprisonment for debt. While repealed by the Judiciary Act Repealer Act (J.A.R.A.), it was reenacted in 1978 as part of the Judicial Code, by Act of 1978, April 28, P.L. 202, No. 53 § 10(59). As reenacted, 42 Pa.C.S.A. § 5108 provides:

§ 5108. Imprisonment for debt

(a) Constitutional restriction.—The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be provided or prescribed by law.[9]

The language above is simply a restatement of the Pennsylvania Constitution, Article I, § 16, which provides:

§ 16. Insolvent debtors

The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be prescribed by law.

The Pennsylvania Supreme Court has had at least two occasions, in more recent times, upon which it could have construed *Colburn* and the constitutional and legislative enactments differently, but declined to do so. In *Silvestri v. Slatowski*, 423 Pa. 498, 503–04, 224 A.2d 212, 216 (1966), Justice Eagen stated:

We note in passing that this Court has previously ruled that attachment of the person may not issue in this type of case: (citing *Colburn* ). Appellants ask us to reconsider *Colburn*. This we refuse to do on the present posture of the record.

9. Section 5108(b) and Pa.R.C.P. 3250, abolish civil arrest after judgment.

In *Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 253 A.2d 263 (1977), on an agreement not merged with the court Order, after finding that contempt proceeding and incarceration for contempt was improper for lack of procedural due process, the Supreme Court said, per Justice O'Brien:

> Assuming arguendo that Mr. Magaziner violated the terms of that agreement, the contempt process of the County Court is surely not the proper vehicle to redress the violation of the contract. The appropriate legal remedy would be an action of assumpsit or replevin or perhaps even a bill in equity for specific performance. Even then, if Mrs. Magaziner won, grave doubt would exist as to whether any judgment, order, or decree could be enforced by an attachment of the person of the defendant. See *Colburn v. Colburn*, 279 Pa. 249, 123 A. 775 (1924) and *Silvestri v. Slatowski*, 423 Pa. 498, 224 A.2d 212 (1966).
>
> Although we understand the feelings of the trial judge faced with a father who required litigation to force him to perform the responsibilities of that status, we cannot allow the processes of the law to be prostituted to achieve what may in the end by a just result. We must always remain a nation of laws not of men—*non sub homine sed sub deo et lege.*

*Id.*, 434 Pa. at 6–10, 253 A.2d at 267–268.

The thrust of these cases, with no case other than *Hopkinson*, to the contrary, requires us to find that even if the ruling by the trial court was correct as to appellant's ability to pay, it could not be enforced by an attachment of the person of appellant.[10] As an intermediate appellate court,

10. Judge Wieand, in his Concurring and Dissenting Opinion, would overrule *Hopkinson* as there cannot be a jailing for failure to pay a debt or breach of contract. Judge Beck would hold that the majority, in finding that a agreement is not enforceable by incarceration, ignores incorporation into the decree which brings into play all powers of the court to enforce the agreement. Judge Wieand would find the agreement is not modifiable, but since the agreement was incorporated, it becomes a court Order and, therefore, the father can be incarcerated under the contempt powers. Thereafter, the Order can be increased or decreased (modified). Judge Beck, on the other

we are not permitted to alter a policy based on constitutional and statutory law as interpreted by the Supreme Court. *Hopkinson*, as to the imposition of incarceration as a sanction, is, therefore, specifically overruled.

In his Concurring and Dissenting Opinion, Judge Cavanaugh would have us retain *Hopkinson* as a proper statement of the law. We would agree that the procedure in *Hopkinson* was correct until sanctions were imposed, and it is the imposition of those sanctions which must be overruled. We note that although *Hopkinson* was an agreement that subsequently was made part of a consent decree, it does not come under the merger doctrine enunciated by the Divorce Code of 1980. This was recognized when this Court held the court below improperly relied on the Divorce Code to empower it to enforce the decree as a court Order. Prior to the Divorce Code of 1980, enforcement of a decree containing a separation agreement was pursuant to an assumpsit action for payment of money or equity for specific performance. The Divorce Code of 1980 brought into play all of the extraordinary powers accorded to statutory imposed duties for enforcement of payment of support and alimony, as well as the concomitant power in the court to modify Orders and mitigate arrears. The Divorce Code in section 103 specifically provides:

> The provision of this act shall not apply to any case in which a decree has been rendered prior to the effective date of the act. This act shall not affect any marital agreement executed prior to the effective date of this act or any amendments or modifications thereto.

While *Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981), in dicta, acknowledged the possibility of merger of agreements into decrees based on *Buswell v. Buswell*, 377 Pa.

hand, would find the agreement as incorporated can be enforced by contempt and incarceration, but that it cannot be modified. The two views point out the dilemma adopting either would produce. Judge Wieand uses incorporation to permit modification and incarceration. Judge Beck uses incorporation to permit incarceration but not modification. Both views do violence to the basic concept of contract which is nonmodifiability (by a court) and nonincarceration for failure to pay a debt.

487, 105 A.2d 608 (1954), *Buswell* discussed merger in the context of enforcement of an Illinois decree according to Illinois law. It did not enforce the merger provision of that decree but permitted specific performance of non-monetary aspects of the prior oral agreement. Also, the doctrine of merger did apply to very specific statutory provisions for support and alimony. Prior to the 1980 Code, our courts permitted merger of agreements in consent Orders under the support laws for alimony pendente lite and alimony in insanity and bed and board divorce cases. Since, prior to 1980, we had no post-divorce alimony and the law did not permit orders for spousal support after divorce, whether an agreement merged in a decree for absolute divorce or not, enforcement was obtained through assumpsit and equity actions and not as a judgment enforced by the court. *Hopkinson* correctly held that the consent decree was enforceable in equity as an Order, but since it was an Order for payment of money and it was not covered by the support laws, it improperly provided for incarceration as a sanction.

Two exceptions existed under the Divorce Code of 1929 (as amended in 1953). The first is a decree for Bed and Board Divorce, 23 P.S. § 11 (repealed), which provided at section 47 for such alimony as the court determined a husband's circumstances would admit of, not to exceed one-third of his income. The Code also specifically provided:

§ 47 Alimony in Divorce From Bed and Board

. . . . .

Attachment; imprisonment or discharge.—The courts may enforce their decrees by attachment, on the return of which they may make such Order either to imprison or discharge the defendants as the facts of the case may justify.

23 P.S. § 47. These Orders, of course, could be modified and the courts would accept stipulations or agreements in regard to such decrees. Once accepted by the court, they "merged". In every sense, they were considered mainte-

nance and support Orders as opposed to the general concept of alimony. *Strickler v. Strickler*, 138 Pa.Super. 34, 10 A.2d 69 (1939). The second provision for post-divorce alimony under the earlier Code was when the respondent was insane, 23 P.S. § 45 Permanent Alimony Where Respondent Insane. However, no provision was made for enforcement by attachment or imprisonment. This is not a defect, at least after 1953, as any form of court-directed alimony or alimony pendente lite, was enforceable pursuant to the Civil Procedural Support Law, Act of July 13, 1953, P.L. 431, 62 P.S. §§ 2043.31, *et seq.*, which provided enforcement of "any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding in divorce....or otherwise." Attachment and incarceration were permitted by statute, as these Orders were derived from public policy and not out of contract.

Agreements for alimony pendente lite, if approved by the court, resulting in an Order were subject to this enforcement. Agreements not approved by the court but entered of record were not. Such an agreement had no judicial sanction and was incapable of judicial compulsion. *See Law of Marriage and Divorce in Pennsylvania*, Freedman, 2nd Edition, Vol. III, § 457. Agreements, however, whether consent decrees or incorporated into divorce decrees, for post-divorce payments after absolute divorce (A Vinculo matrimonii) were not accorded this stature, as is succinctly stated in Freedman, *supra.*

§ 662. Alimony and Property Agreements

In Pennsylvania there is no statutory provision authorizing the court to include as part of the decree the agreement of the parties for the adjustment of their property rights and for the payment of post-divorce support. The absence of this authority, *common in other states*, has caused considerable difficulty to Pennsylvania domiciliaries since the passage of the Revenue Act of 1942.... The statute (Revenue Act) has now been broadened *but legislation is still desirable in Pennsylvania to autho-*

*rize the inclusion of property settlement agreements in the divorce decree.* (Emphasis added.)

 Not until 1980 did the legislature heed this call and enact legislation which now permits merger of a separation/property settlement agreement into a divorce decree. The *Hopkinson* agreement, while termed a consent decree, preceded this legislation and, therefore, does not receive the benefit accorded to "merged agreements" under present law. Thus enforcement cannot be pursuant to attachment of the person, as permitted by properly merged agreements, under current law or those limited areas discussed above under earlier law. It, therefore, is governed by contract law; breach creates a "debt", debts may not be enforced by jailing under the Pennsylvania Constitution and statutes, *supra.* By ignoring *Hopkinson,* as the Cavanaugh dissent would have us do, we permit a confusing and erroneous statement of the law to remain, which will return time and time again on appeal producing wasteful and unnecessary litigation. Thus the enforcement provisions for failure to comply with an agreement, not merged into a support Order or divorce decree, are those available in any other civil action, at law or in equity for payment of money—judgments and execution or attachment of property. It is likely for this reason that the legislature has enacted provisions in the Divorce Code and support law permitting agreements for support to be merged into support Orders which supersede the agreement as these can be enforced by attachment of the person and attachment of wages. As an instrument of public policy, Orders of support create a legal duty and not a contractual undertaking; willful failure to pay becomes a violation of law and not breach of contract; arrearages become a legal obligation enforced by the court, and not a debt enforced through private litigation. It also means, however, such Order is controlled by the court and, subject to the law, may be modified, terminated, suspended or reinstated as conditions warrant and arrearages may be remitted.

Finally, in the Concurring and Dissenting Opinion, Judge Cavanaugh states the majority has misconstrued the nature of the agreement to support a spouse or child. He goes on to state:

An agreement to support a child should not be equated with a commercial agreement with respect to the remedies for breach of such a contract. A commercial contract or ordinary agreement does not subject the defaulting obligor to confinement.

(Concurring and Dissenting Opinion, Cavanaugh, J., p. 518.) He would go on to find that the court below properly found appellant in willful contempt and imposed an Order of incarceration to bring about compliance.[11]

While these are admirable sentiments, nothing in our research of the law of Pennsylvania supports a special law of contract as it applies to separation/property settlement agreements. Quite to the contrary, the forerunner of the Divorce Code of 1980 was the Joint State Government Commission Report, June 1961, Proposed Divorce Code for Pennsylvania (JSGC). Section 306 (Separation Agreement) clearly set forth a detailed approach to court consideration and approval of separation agreements, which, if adopted in full, would have eliminated the problem we are presented with here. Indeed, it would appear that some of those provisions, *not adopted by the legislature*, have crept into

11. At page 516 of the dissent, it is noted that the author of the majority quotes extensively from *Hopkinson*, with approval, in *Schoffstall v. Schoffstall*, 364 Pa.Super. 141, 527 A.2d 567 (1987), which he also authored. Quoting from *Hopkinson*, in the context of a contempt proceeding on an *alimony order*, was totally appropriate as the section quoted was and is a correct statement of law. It is the result and application of that law, in the face of the constitution and jailing for civil debt, which is erroneous in *Hopkinson*, although proper in *Schoffstall*. Alimony orders may be enforced by attachment and incarceration under the Divorce Code, as previously stated, and as detailed in the majority Opinion, even under the prior Code, pursuant to statute in limited cases. The *Hopkinson* consent decree did not acquire the statutes of an Order that had statutory authority permitting it to be enforced other than as an agreement. *Schoffstall* does not control in this case as, here, we are dealing with an agreement, there, the court was enforcing a court Order. *Schoffstall* is distinguishable from *Hopkinson* and the case before us in that respect.

the Montgomery County Form 2 Decree. It is relevant and illuminating, however, to detail statements of the commissioners in relation to how agreements should be treated in law.

§ 306 [Separation Agreements]

## Commissioner's Note

An important aspect of the effort to reduce the adversary trappings of marital dissolution is the attempt, made by Section 306, to encourage the parties to reach an amicable disposition of the financial and other incidents of their marriage. This section entirely reverses the older view that property settlement agreements are against public policy because they tend to promote divorce. Rather, when a marriage has broken down irretrievably, public policy will be served by allowing the parties to plan their future by agreeing upon a disposition of their property, their maintenance, and the support, custody, and visitation of their children.

Subsection (b) undergirds the freedom allowed the parties by making clear that the terms of the agreement respecting maintenance and property disposition are binding upon the court unless those terms are found to be unconscionable. The standard of unconscionability is used in commercial law, where its meaning includes protection against one-sidedness, oppression, or unfair surprise (see section 2–302, Uniform Commercial Code), and in contract law, *Scott v. U.S.*, 12 Wall ( [ (79) ] U.S.) 443 [20 L.Ed.2d 438] (1870) ("contract ...unreasonable and unconscionable but not void for fraud"); *Stiefler v. McCullough*, 174 N.E. 823, 97 Ind.App. 123 (1931); *Terre Haute Cooperage v. Branscome*, 35 So.2d 537, 203 Miss. 493 (1948); *Carter v. Boone County Trust Co.*, 92 S.W.2d 647, 338 Mo. 629 (1936). It has been used in cases respecting divorce settlements or awards. *Bell v. Bell*, 371 P.2d 773, 150 Colo. 174 (1962) ("this division of property is manifestly unfair, inequitable and unconscionable"). *Hence the act does not introduce a novel stan-*

*dard unknown to the law. In the context of negotiations between spouses as to the financial incidents of their marriage, the standard includes protection against overreaching, concealment of assets, and sharp dealing not consistent with the obligations of marital partners to deal fairly with each other.*

In order to determine whether the agreement is unconscionable, the court may look to the economic circumstances of the parties resulting from the agreement, and any other relevant evidence such as the conditions under the agreement was made, including the knowledge of the other party. If the court finds the agreement not unconscionable, its terms respecting property division and maintenance may not be altered by the court at the hearing. (Emphasis added.)

If the parties must deal with each other in reaching an agreement according to the established law of contracts under commercial law, as indicated by the commissioners, the court cannot employ a different standard, which would be ephemeral and personal to each judge in enforcing those agreements. To deviate from established contract law in any respect, except where the legislature has clearly spoken (and it has in numerous ways), is to invite confusion and uncertainty. It is not the prerogative of an intermediate appellate court to pronounce such a far reaching and unpredictable principle of law in one of the most volatile areas of legal and personal relationships in our society.

In summation, we hold separation or property settlement agreements for support remain as contracts to be enforced at law or in equity unless they are merged into a divorce decree or court Order. Upon merger, they are superseded as contracts and take on all of the attributes of support Orders for purposes of modification and enforcement. This is so whether they be agreements for spousal support or child support. It is also possible to have agreements and support Orders standing apart and enforced separately. *See Brown v. Hall, supra; Madnick v. Madnick,* 339 Pa.Super. 130, 488 A.2d 344 (1985); *Millstein v. Millstein,*

311 Pa.Super. 495, 457 A.2d 1291 (1983). In this case, since there was no merger, the agreement may not be modified or enforced as a court Order. As a contract, it may be enforced only in accordance with the law regulating contracts through proceedings of law or in equity. Judgments would be enforced as indicated in footnote 5, *supra.* The breach of agreement by failure to pay creates a debt which, pursuant to our constitution and statutory law, may not be enforced by attachment of the person even when there is a finding of contempt for failure to obey an Order requiring specific performance. The debt may be the basis for judgment and liens which remain undiminished until paid, as they cannot be vacated by the court absent finding of fraud or invalidity of the contract. *Litwack, supra.* Any personal or other property, subject to lien and execution obtained by appellant, will be hostage to this debt; however, attachment of his person is not permitted. The Order of attachment must be vacated.

The appeal at No. 02259 Philadelphia, 1985 is dismissed; the appeal at No. 03025 Philadelphia, 1985 is quashed. At appeal No. 01423 Philadelphia, 1986, Order of dismissal affirmed; at appeal No. 01343 Philadelphia, 1986, the Order of attachment is vacated and the case remanded for further proceedings to determine remedies available to enforce the agreement in accordance with appellant's ability to pay and consistent with this Opinion.

Jurisdiction relinquished.

Concurring and dissenting opinion by CAVANAUGH, J.

Concurring and dissenting opinion by WIEAND, J., joined by ROWLEY, J.

Concurring and dissenting opinion by BECK, J.

CAVANAUGH, Judge, concurring and dissenting:

I dissent from that part of the majority opinion entitled *"Section E. Contempt Parameters on Agreement"* which reversed the order of contempt entered against the appel-

lant and vacated the order of attachment at Appeal No. 01343 Philadelphia, 1986. I would affirm the order of contempt based on the appellant's willful failure to comply with the Court's order directing that he carry out the terms of the support agreement he voluntarily entered.

Three judges of the Court of Common Pleas of Montgomery County gave separate consideration to the appellant's conduct in refusing to comply with the terms of the property settlement entered between Dr. Carl R. Sonder, the appellant, and his wife, Suzanne C. Sonder, on November 29, 1983. The agreement was in simple and understandable language and Dr. Sonder actively participated in analyzing, correcting and rewriting the agreement under which he was to pay his wife $800.00 per week. Subers, J. determined the agreement to be valid and binding and that the contract spoke for itself. Dr. Sonder initially complied with the terms of the contract. As pointed out by Subers, J. slip opinion, page 6, opinion of January 22, 1986:

"It stretches the imagination of this Court to believe that Dr. Sonder was not aware of the contents of this P.S.A. that he signed or that the P.S.A. would not constitute a binding agreement."

An order was entered by the court below directing Dr. Sonder to pay to Suzanne Sonder the sum of $28,000.00 pursuant to paragraph 6 (A) of the settlment agreement and counsel fee after a hearing. Stefan, J. of the court below, in an opinion dated February 4, 1986, held that the issue was one of credibility concerning the appellant's ability to comply with the agreement. The court heard testimony concerning the appellant's income from his medical practice. It found his wife's testimony concerning his income was credible and that the appellant's was not. The court concluded the appellant simply did not choose to meet his obligations under the property settlement agreement and that he was properly found in contempt of the order of March March 27, 1985 directing compliance with the settlement agreement.

A civil contempt proceeding was held before Salus, J. on May 12, 1986 and again extensive testimony was taken concerning the appellant's ability to comply with the support agreement. The court found that Dr. Sonder had the present ability to pay the full amount of the support agreement.[1] By an adjudication of Salus, J. dated July 8, 1986, the court affirmed its order directing the appellant to make payment on arrearages or be committed to the county prison on weekends until purging himself of contempt.

The court below, in my opinion, properly relied on *Hopkinson v. Hopkinson*, 323 Pa.Super. 404, 470 A.2d 981 (1984). In that case the husband and wife entered into a written agreement providing that the husband was to pay the wife $23,500.00 per year in weekly installments and to pay support for his children. Subsequently, the parties were divorced. The wife filed a complaint in equity alleging that the husband had breached his obligations under the property settlement agreement. A consent decree was entered directing the husband to pay certain sums and to comply with all aspects of the property settlement agreement. Judgment was entered against the husband for arrearages. It was determined that the husband wilfully failed to comply with this consent decree and notwithstanding his claim that he was not financially able to comply, he was held in contempt and sentenced to weekends in prison until he purged himself of contempt. On appeal, we affirmed, Opinion by Cirillo, P.J., on the basis that the court below properly exercised its civil contempt powers to enforce compliance with the orders of the court where the purpose is to compel performance and not impose a penalty.

The majority opinion at page 503 specifically overrules *Hopkinson v. Hopkinson.*[2] I find no basis for overruling

---

1. It is interesting to note that while Dr. Sonder now contends he is completely unable to pay $800.00 per week for support of his wife and two children, he wrote to Mrs. Sonder on April 28, 1986 and offered to pay a total of $600.00 per week for support of his wife and two children.

2. The majority opinion at page 502, stated:

*Hopkinson,* and note that in *Schoffstall v. Schoffstall,* 364 Pa.Super. 141, 527 A.2d 567 (1987) *appeal denied Schoffstall v. Schoffstall,* 517 Pa. 608, 536 A.2d 1333 (1987) Tamilia, J., the author of the present majority, quoted extensively from *Hopkinson v. Hopkinson, supra,* with approval.[3] As recently as November 12, 1987, in *Colbert v. Gunning,* 368 Pa.Super. 28, 533 A.2d 471 (1987) we cited *Hopkinson* with approval in support of the rule that a court may exercise its civil contempt powers to enforce compliance with its orders.

The majority states that even if the trial court's ruling was correct concerning the appellant's ability to pay the amount of support ordered, it would be powerless to enforce its order by holding appellant in contempt of court. It relies on *Commonwealth ex rel. Magaziner v. Magaziner,* 434 Pa. 1, 253 A.2d 263 (1977) to support this conclusion. In my opinion *Magaziner* is so distinguishable on the facts and procedure to be of little precedential value. In *Magaziner,*

> The trial court relied on *Hopkinson v. Hopkinson,* 323 Pa.Super. 404, 470 A.2d 981 (1984) as authority to impose a jail sentence for contempt for non-payment under the agreement. We hold *Hopkinson* not to be applicable. (Emphasis added.)

I disagree that we have the authority to overrule a case that does not apply to the matter before us. I find a basic inconsistency in determining that a case is not applicable to the matter *sub judice* and at the same time specifically overruling it.

**3.** In *Schoffstall v. Schoffstall,* 364 Pa.Super. 147, 527 A.2d at 570, this court quoted from *Hopkinson v. Hopkinson* as follows:

> The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution. *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980); *Commonwealth v. Haefner,* 470 Pa. 392, 368 A.2d 686 (1977). A court may exercise its civil contempt power to enforce compliance with its orders or decrees if its purpose is to compel performance and not to inflict punishment. *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977); *Petition of Specter,* 439 Pa. 404, 268 A.2d 104 (1970); *Commonwealth v. Feick,* 294 Pa.Super. 110, 439 A.2d 774 (1982). The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive. *In re Martorano, supra* [464 Pa. 66, 346 A.2d 22 (1977)]; *Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060 (1976). *Hopkinson v. Hopkinson,* 323 Pa.Super. 404, 411, 470 A.2d 981, 985 (1984).

an order for support was entered and the parties were divorced. A dispute arose, not about the support order, but about various personal items belonging to the wife and children and located in the husband's house. Judge Bonnelly informed the husband's counsel by letter that the husband had breached his agreement to permit wife to take the children's and her belongings from the house and told the husband's counsel that the wife would appear at the house at a certain time and if the husband refused to comply with the order of the court, the husband would be considered in contempt. The husband was not at the house at the appointed hour. At a hearing before the court, the husband did not appear. Subsequently, the husband would not let the wife into the house to get her belongings and the court signed an order stating "let attachment issue, Returnable Forthwith" for the arrest of husband and he was arrested. The Supreme Court issued a writ of special certiorari so that it could exercise its King's Bench Powers to correct an allegedly flagrant violation of petitioner's rights. The court stated at 434 Pa. 5–6, 253 A.2d 266:

> Our review of the record convinces us that petitioner's characterization of the proceedings below has much merit in it. Assuming arguendo that petitioner could be shown to be in contempt of a valid order of the County Court, *surely that court did not follow the proper procedure for putting the question in issue.*

> . . . . .

> In other words, it is a several step process that must take place to hold one in civil contempt—rule to show cause why an attachment should not issue, answer and hearing, rule absolute (arrest), hearing on the contempt citation, adjudication of contempt.

The court pointed out at 434 Pa. 6–8, 253 A.2d 267:

> For it should be beyond question that one can be held in civil contempt only for failure to obey some process or order of court.

> . . . . .

> *In the instant case also, there is no order of court upon which the contempt order is predicated.* (Emphasis added)

What the Supreme Court stated about the agreement of the parties, and which is quoted at length by the majority at page 495 as simply dictum, as the case had nothing to do with visitation of a support order. The only issue was the improper procedure followed in an endeavor to imprison the husband for failure to allow his wife to take her belongings out of his house.

I do not agree that a reading of *Commonwealth ex rel. Magaziner v. Magaziner, supra,* should lead us to conclude that even if the appellant wilfully failed to carry out the order of the court requiring him to pay support, that it was powerless to hold him in civil contempt. Further, *Hopkinson v. Hopkinson, supra,* does not appear to me to be in conflict with *Commonwealth ex rel. Magaziner v. Magaziner,* so that we must expressly overrule *Hopkinson v. Hopkinson,* as the majority would do.

Finally, I believe that the majority has misconstrued the nature of an agreement to support a spouse or child. The majority states at page 509:

> Thus the enforcement provisions for failure to comply with an agreement, not merged into a support order or divorce decree, are those available in any other civil action, at law or in equity for payment of money—judgments and execution or attachment of property.

An agreement to support a spouse or child should not be equated with a commercial agreement with respect to the remedies for breach of such a contract. Breach of a commercial contract or ordinary agreement does not subject the defaulting obligor to confinement. Breach of a contract to purchase an automobile or failure to repay a bank loan, barring fraud or some other factor not here relevant, will not result in the imposition of the serious sanctions that should result in failure to support one upon whom the law imposes a duty to support where the court has entered an order requiring support. I agree with the court below that

the appellant has wilfully failed to comply with an appropriate order and was properly held in contempt. As we stated in *Schoffstall v. Schoffstall*, 364 Pa.Super. 141, 147, 527 A.2d 567 570, relying on *Hopkinson v. Hopkinson, supra:* "A court may exercise its civil contempt power to enforce compliance with its orders or decrees if its purpose is to compel performance and not to inflict punishment."

Accordingly, I dissent from Part E of the majority opinion and the vacating of the order of attachment at Appeal No. 01343 Philadelphia, 1986. I concur in the result only as to the remainder of the opinion.

WIEAND, Judge, concurring and dissenting:

On November 29, 1983, Carl Sonder and his estranged wife, Suzanne, entered into a property settlement agreement which provided, inter alia, that Sonder would pay to his wife for the support of two minor children the sum of eight hundred ($800.00) dollars per week. Paragraph seventeen of the agreement provided further as follows:

SEVENTEENTH: INCORPORATION IN JUDGMENT FOR DIVORCE.

In the event either Husband or Wife at any time hereafter obtain a divorce in the cause presently or hereafter pending between them, this Agreement and all of its provisions shall be incorporated into any such judgment for divorce, either directly or by reference. This Agreement, upon incorporation, shall not merge into the decree, but shall remain in full force and effect. The court on entry of the judgment for divorce shall retain the right to enforce the provisions and terms of the Agreement.

Sonder made the agreed support payments until May, 1984, when he unilaterally reduced the payments to four hundred ($400.00) dollars per week.

On October 16, 1984, Suzanne Sonder filed a complaint in equity requesting a decree specifically enforcing the support agreement. Carl Sonder defended on the ground that the agreement had been merely a proposed draft presented during negotiations and did not represent a final "meeting

of the minds." He also contended that the agreement was invalid because of duress and undue influence. After hearing, the trial court entered a decree, dated March 27, 1985, which ordered Carl Sonder to "comply with" the terms of the agreement. Exceptions were dismissed, and Sonder appealed. This appeal was filed to No. 2259 Philadelphia, 1985.

Three weeks later, on April 18, 1985, Suzanne Sonder filed a petition asking the court to hold Carl Sonder in contempt for failing to pay the full amount of the agreed support as directed by the court's order of March 27, 1985. After hearing, the court found that appellant was in contempt and ordered him to pay arrearages of twenty-nine thousand, eight hundred ($29,800.00) dollars, as well as counsel fees and costs in the amount of one thousand ($1,000.00) dollars. An appeal from this order, dated October 24, 1985, was filed to No. 3025 Philadelphia, 1985.

Meanwhile, on December 13, 1984, a final decree of divorce had been entered which included the following language:

[the agreement] is hereby incorporated into this Decree and Order by reference as fully as though the same were set forth at length. Said agreement shall not merge with but shall survive this Decree and Order.

On January 3, 1986, Suzanne Sonder filed *in the equity action* a second petition to adjudicate Carl Sonder in contempt for refusing to comply with the parties' agreement by paying eight hundred ($800.00) dollars per week for the support of the children. Shortly thereafter, Carl filed *in the divorce action* a petition to reduce the amount of the court's support order and to remit arrearages on grounds that his financial circumstances had changed. The trial court dismissed Carl's petition for lack of jurisdiction. By order dated May 13, 1986, the trial court found Carl Sonder in contempt of court and directed him to pay the sum of ten thousand ($10,000.00) dollars or be committed to prison for a period of ninety (90) days. This order was the subject of an appeal filed to No. 1343 Philadelphia, 1986. An appeal

from the order dismissing the petition to reduce the support provisions of the divorce decree for want of jurisdiction was filed to No. 1423 Philadelphia, 1986.

## No. 2259 Philadelphia, 1985

The majority would dismiss the appeal at No. 2259 Philadelphia, 1985 on grounds that "the validity of the agreement was rendered moot when appellant insisted the agreement be incorporated in the divorce decree." I believe the majority misconceives the concept of mootness; and, therefore, I dissent.

"A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." Black's Law Dictionary 909 (5th ed. 1979), citing *Leonhart v. McCormick*, 395 F.Supp. 1073, 1077 (W.D.Pa.1975). "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and if, pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal will be dismissed." 2 P.L.E. Appeals § 313. See: *American Mutual Liability Ins. Co. v. Zion & Klein*, 319 Pa.Super. 547, 550, 466 A.2d 679, 680 (1983) (citing cases); *K.L.H. v. G.D.H.* 318 Pa.Super. 330, 334, 464 A.2d 1368, 1371 (1983); *Commonwealth ex rel. Watson v. Montone*, 227 Pa.Super. 541, 543, 323 A.2d 763, 765 (1974). See also: *Macioce v. Glinatsis*, 361 Pa.Super. 222, 522 A.2d 94 (1987); *Stolker v. Stolker*, 250 Pa.Super. 356, 378 A.2d 975 (1977).

In the instant case, the dispute between the Sonders regarding their property settlement agreement is not moot. Suzanne Sonder brought an equity action to obtain a decree compelling Carl Sonder to perform his agreement to support the parties' children. The husband-appellant unsuccessfully attempted to establish that a final support agreement did not exist or that the agreement relied upon by his wife was otherwise unenforceable. At the conclusion of those proceedings, the trial court entered a decree of specific performance. Its order is facially valid and one with which appellant can be made to comply. As such, he is

entitled to have the decree reviewed by an appellate court which can, if the decree is improper, grant relief. Such an appeal, therefore, is not moot.

The fact that the agreement was incorporated into the divorce decree does not render moot the issue of the validity of the agreement. In the first place, the husband-appellant also attempted to challenge the validity of the agreement in the divorce action but was not permitted to do so. Then he sought to have the agreement merged into the divorce decree so that the amount of the support order could be reviewed by the court from time to time as circumstances changed. The agreement, as the majority concedes, is subject to enforcement separate and apart from the decree of divorce. Cf. *Guerin v. Guerin*, 296 Pa.Super. 400, 442 A.2d 1112 (1982) (unappealed order reducing support not res judicata as to enforceability of private agreement in assumpsit action). In neither the equity action nor the divorce action, therefore, has the dispute become moot.

When the majority suggests that appellant will not be heard to challenge the validity of the support agreement because he wanted it to be incorporated into the divorce decree, it is talking in terms of estoppel and not mootness. However, the record in this case makes it clear that appellant consistently attempted to attack the validity of the support agreement. He has done nothing that I can discern that would estop him from filing an appeal which requires this Court to review the equity decree entered by the trial court requiring him to perform the same.

On the merits, however, appellant's contention that the trial court erroneously enforced the agreement must fail. The evidence clearly supports the trial court's finding that appellant, a doctor of psychiatry, was a learned man who understood the terms of the written agreement and executed the same intending to be bound thereby. If he made a bad bargain, that fact alone does not permit him to avoid his agreement.

A valid agreement for support, moreover, can be specifically enforced. See: *Silvestri v. Slatowski*, 423 Pa. 498,

224 A.2d 212 (1966); *Colburn v. Colburn,* 279 Pa. 249, 123 A. 775 (1924). See also: *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981).

Because I find no error in the equity court's decree of March 27, 1985, which ordered appellant to comply with his agreement, I would affirm the same.

No. 3025 Philadelphia, 1985

I would also affirm the order of the trial court which adjudicated the amount due on the private agreement and made an award of counsel fees. This order, even though it spoke in terms of contempt, was a final determination of the amount due and owing by appellant and was thus sufficiently final to permit appellate review.

Although a support agreement which has not merged in a court order for support can be specifically enforced by a court of equity, I agree with the majority that under the present state of the law in Pennsylvania a court cannot impose a prison sentence for contempt of court upon a person who has failed to make support payments required by a private agreement. See: *Colburn v. Colburn, supra; Pierce's Appeal,* 103 Pa. 27 (1883); *Stull v. Stull,* 126 Pa.Super. 255, 191 A. 187 (1937) (citing cases). See also: *Silvestri v. Slatowski, supra.* To permit enforcement of a private agreement by attachment of an obligor's person would violate the Pennsylvania Constitution's ban on imprisonment for private debt. See: Pennsylvania Constitution, Art. I, § 16. See also: 42 Pa.C.S. § 5108. If private support agreements, although enforceable by a court of equity, cannot be enforced by attachment of the person of the obligee, then the means of enforcement must necessarily be limited to attachment of his or her property. This is done by determining the amount of arrearages, by reducing the same to judgment, and by issuing execution against the debtor's property.

This is what the equity court did in the instant case. It made a determination of the amount which the husband-appellant had failed to pay as support pursuant to his agreement and directed that the same be paid. In addition, the

court ordered the husband-appellant to pay counsel fees and costs in the amount of one thousand ($1,000.00) dollars. This was a final determination of the amount owed by appellant as of the date of the court's order. As such, it was a final order, capable of supporting the entry of judgment in favor of the wife-appellee and against the husband-appellant.

In such cases, the general rule is that the order is not appealable until it has been reduced to judgment. See: Pa.R.App.P. 301(c). This court's practice in cases where this has been omitted, however, is to direct the prothonotary of the lower court to enter judgment on the docket nunc pro tunc and thereafter to consider the appeal on its merits. That is what I would do in the instant case. I would direct the prothonotary in Montgomery County to enter judgment on the trial court's order and consider the merits of husband's appeal.

When one examines the merits of this appeal, however, it is readily apparent that the determination of damages by the equity court must be affirmed. The evidence was sufficient to support the equity court's findings on the issue of damages; and those findings, therefore, are binding upon a reviewing court. See: *Presbytery of Beaver–Butler of United Presbyterian Church v. Middlesex Presbyterian Church,* 507 Pa. 255, 266, 489 A.2d 1317, 1323 (1985); *Commonwealth ex rel. Gibson v. DiGiacinto,* 497 Pa. 66, 70, 439 A.2d 105, 107 (1981); *In the Interest of Miller,* 301 Pa.Super. 511, 515, 448 A.2d 25, 27 (1982).

Appellant contends that the equity court erred when it denied his last-minute request for a continuance. Whether to grant or deny a motion for continuance, however, is a matter within the discretion of the trial court, and its decision will not be reversed on appeal unless there has been a manifest abuse of discretion. *Feingold v. Southeastern Pennsylvania Transportation Authority,* 339 Pa. Super. 15, 19, 488 A.2d 284, 287 (1985), *aff'd,* 512 Pa. 567, 517 A.2d 1270 (1986); *Love v. Harrisburg Coca–Cola Bottling Co.,* 273 Pa.Super. 210, 214, 417 A.2d 242, 244 (1979).

My review of this case discloses no abuse of the equity court's discretion. It was not an adequate reason for a continuance that counsel delayed preparation until the morning of the same day on which hearing had been scheduled and then found that the morning hours would be consumed by other urgent matters.

## No. 1343 Philadelphia, 1986

The order from which this appeal was taken was entered in the equity action in response to a second petition to hold the husband-appellant in contempt for refusing to comply with the decree of specific performance which had been entered on March 27, 1985. The order found Carl Sonder "in contempt of support agreement" and directed that he be committed to prison for a period of ninety (90) days unless he purged himself by paying the sum of ten thousand ($10,000.00) dollars on account of arrearages which had accumulated pursuant to the agreement. This order, quite clearly, was an attempt to enforce the party's private agreement by attaching the person of the husband-appellant. I agree with the majority that under decisions of the Supreme Court of Pennsylvania the trial court's order was improper and must be reversed. A court cannot properly impose a prison sentence for contempt of court for failing to make support payments called for by a private agreement. *Colburn v. Colburn, supra; Pierce's Appeal, supra; Stull v. Stull, supra.* See also: *Silvestri v. Slatowski, supra;* The panel decision of this Court in *Hopkinson v. Hopkinson,* 323 Pa.Super. 404, 470 A.2d 981 (1984), which reached a contrary result, is out-of-line with Supreme Court decisions and is not controlling of the instant case.

## No. 1423 Philadelphia, 1986

It remains to be decided whether a court which has entered an order for the support of children can be prevented from modifying its order by the existence of a private agreement between mother and father establishing the amount of support which is to be contributed by a parent for his or her children.

When an agreement for support merges into a court order, the agreement no longer has independent effect, and only the court order is enforceable. *Commonwealth ex rel. Tokach v. Tokach,* 326 Pa.Super. 359, 474 A.2d 41 (1984). When a support agreement is incorporated into but does not merge with a separate court order, however, the agreement between the parties survives and can be enforced in an action at law or in equity. See: *Brown v. Hall, supra; Guerin v. Guerin, supra.* See also: *Silvestri v. Slatowski, supra.* In that event, the support order has a separate existence and can also be enforced. It is obvious, of course, that there can be only one satisfaction.

Merger is a matter of intent, to be determined from the terms of the contract or the conduct of the parties. *McGough v. McGough,* 361 Pa.Super. 391, 522 A.2d 638 (1987). In the instant case, the parties expressed their intent clearly. The terms of their agreement were to be the basis for and were to be included in the decree of divorce. The agreement, however, was not to merge but was to survive and have a separate, independent existence. As a result, the duty of husband-appellant to support his children was established separately by (1) agreement; and (2) court order.

The agreement, as we have already observed, can be enforced by an action at law or in equity, but it cannot be enforced by attaching the person of the obligor. A court order, on the other hand, can be so enforced. One who is in contempt of a duty of support established by court order may be imprisoned until he purges himself of contempt by complying with terms and conditions imposed by the court. See: *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977); 23 Pa.C.S. § 4345. See also: Pa.R.C.P. §§ 1910.20, 1910.21.

If a court has the power to enforce an order of child support by exercising its contempt powers, it must also have the right to modify the support order. The law is clear that "there is no contempt in refusing to obey an order when the alleged contemnor, without fault on his part, is unable to comply with it." *Grubb v. Grubb,* 326

Pa.Super. 218, 225, 473 A.2d 1060, 1063 (1984) (citing authorities). Where the person against whom a support order has been entered is laid off, is disabled, or otherwise becomes unable to comply with a court order without his or her fault, the court must have the power to reduce the amount of the order so that compliance is possible. Similarly, a court must be able to increase the amount of a support order for child support when circumstances change so as to require additional funds for the support of the child or children.

Modification of a court order for support is not precluded by the existence of a separate support agreement between the parties. In *Millstein v. Millstein*, 311 Pa.Super. 495, 457 A.2d 1291 (1983), a panel of this Court held that a separate agreement would not preclude a court from increasing a parent's child support obligation beyond the amount provided in the agreement, but that the agreement would preclude a parent from reducing his or her child support obligation to an amount less than the amount established by the agreement. This, in my judgment, is only partially correct. A separate agreement certainly does not preclude a court from increasing the amount of its order for child support beyond that provided in the agreement. This must necessarily follow from the rule that the parents cannot bargain away the right of a child to be adequately supported. See: *Abarbanel v. Weber*, 340 Pa.Super. 473, 482 n. 3, 490 A.2d 877, 881 n. 3 (1985) (citing cases); *Mallinger v. Mallinger*, 197 Pa.Super. 34, 37, 175 A.2d 890, 891 (1961).

It is also true that a court of law or equity cannot reduce the amount which a parent has separately agreed to pay for the support of a child in a private agreement. This necessarily follows from the principle that a court will not rewrite for the parties their private agreement. See: *Amoco Oil Co. v. Snyder*, 505 Pa. 214, 220–221, 478 A.2d 795, 798 (1984); *Trumpp v. Trumpp*, 351 Pa.Super. 205, 209, 505 A.2d 601, 603 (1985); *Wickes Corp. v. Newtown Savings Ass'n*, 322 Pa.Super. 453, 463, 469 A.2d 1078, 1083

(1983). Such an agreement, however, can only be enforced by an action at law or in equity. It cannot be enforced by attaching the person of a defaulting parent.

A court may always modify its own order for the support of a child. It may modify its order not only upwards, but downwards as well. See: *Brown v. Hall, supra,* 495 Pa. at 642, 435 A.2d at 862 ("parties to a divorce cannot restrict the court's power to modify a *support order* as facts, circumstances, and justice may require"). Only an order which can be modified as circumstances dictate can be enforced by attaching the person of the obligor or by imposing a sentence of imprisonment upon a contumacious defendant. To the extent that the decision in *Millstein* holds otherwise, it is contrary to the law of this Commonwealth and should be overruled. Otherwise, the parties' private agreement becomes enforceable by attaching the obligor's person.

In the instant case, the husband-appellant filed in the divorce action a petition to reduce the amount of the *court order* for the support of his children. He sought to have his petition heard by the court at the same time as the court heard the wife-appellee's contempt petition which had been filed in the equity action. The trial court heard the contempt petition but dismissed appellant's petition to reduce the support order. It did so on jurisdictional grounds, without giving any reason for its decision. In my judgment, it would have been possible for the court to consolidate wife's petition for contempt and husband's reduction petition and hear both at the same time. Because the trial court elected not to do so, the husband-appellant's petition to reduce the amount of the court's order for child support has not been decided.

Therefore, I would remand the petition to reduce the order of child support for an evidentiary hearing and a determination by the trial court as to whether appellant's circumstances have changed in such a manner that he is entitled to have the court's order for child support reduced.

## Summary

I would hold that the parties validly incorporated their private agreement into the divorce decree without causing their agreement to be merged into the decree. Consequently, the child support provisions of the agreement survived the court order directing appellant to contribute to the support of his children. The provisions of the parties' agreement are not subject to modification by a court. However, the agreement can only be enforced by an action at law or in equity; it cannot be enforced by attaching appellant's person. The court order, on the other hand, can be enforced by the contempt powers of the court; and, consequently, appellant can be imprisoned for a failure to comply therewith. An order so enforceable is subject to being increased or decreased by the court after hearing as the facts, circumstances, and justice may require. This, I submit, has always been the law of this Commonwealth. Although the wife-appellee can in this case have several remedies, she can have only one satisfaction.

Applying these principles to the several appeals now before the court en banc, I would affirm the orders which are the subject of appeal at Nos. 2259 and 3025 Philadelphia, 1985. I would reverse the order which has been appealed to No. 1343 Philadelphia, 1986 and, in No. 1423 Philadelphia, 1986, I would remand appellant's petition seeking to reduce the amount of the court order for further proceedings.

ROWLEY, J., joins.

BECK, Judge, concurring and dissenting:

This case raises issues central to our family law jurisprudence and provides this court an opportunity to eliminate the confusion surrounding these issues which has persisted in our case law for years. The crux of the matter is a question of the power of our courts—their power to modify and enforce obligations relating to child support, alimony, property distribution upon divorce, and property settlement or separation agreements incorporated and/or merged into

divorce decrees. Although we have addressed many forms of this question, arising from fact patterns as diverse as they are numerous, in my opinion we have not done so with a sufficient degree of clarity or consistency. We have failed to provide either the trial court bench or the bar with any true guidance. As a result, our trial courts have struggled and understandably failed to come to a consistent approach to these issues.[1] The bar has been forced to employ "magic" words like "incorporate" and "merge" in the agreements they draft and the forms of divorce decrees they choose, always awaiting new decisions that will instruct them to adjust their incantations once again.[2]

In this case, the facts fall into an all too familiar pattern. It is fundamentally the story of a husband who will not pay the support he has both agreed to pay and which he has been ordered to pay and of a wife's attempts over a period of years to force him to pay. Specifically, the facts are as follows.

On November 29, 1983, Suzanne and Carl Sonder, who were then separated but still married, executed an agreement in which they agreed upon the disposition of their

1. This case and its companion, *Dechter v. Kaskey*, —— Pa.Superior Ct. ——, 549 A.2d 588 (1988) are perfect illustrations. In this case, a trial judge sitting on the Common Pleas Court for Montgomery County interpreted a divorce decree that provided for the incorporation without merger of a property settlement agreement to mean that the court had no power to decrease the amount of child support due under the agreement. In *Dechter,* another trial judge sitting on the same court held precisely the opposite, despite the fact that the divorce decree was identical to that in this case, and reduced the child support due under the agreement by almost $100 per week.

2. Effective February 12, 1988, the legislature amended the Divorce Code to eliminate this confusion. Through the addition of a new section 401.1, the substance of which is set forth below, the legislature has completely removed the significance of words like incorporate or merge when used in agreements relating to matters within the jurisdiction of the court presiding over proceedings under the Divorce Code. The power of the court to enforce and/or to modify such agreements is now settled as a matter of statutory law. The degree to which this amendment will affect pending divorce cases and agreements already executed is not an issue presented for decision in the instant case, since no party has argued that the amendment should be applied retroactively. Therefore, we must decide this case under the state of the law prior to the amendment.

property and the custody and support of their two minor children. The agreement provided that Dr. Sonder ("husband") would pay Mrs. Sonder ("wife") $800 per week in child support. It did not provide for any payments in the nature of spousal support or alimony. Other provisions of the agreement of particular importance here are as follows:

[Section 11] ENFORCEMENT.

(a) It is expressly understood and agreed by and between the parties hereto that this Agreement may be specifically enforced by either Husband or Wife in a Court of Equity....

(b) Notwithstanding anything to the contrary herein, Husband or Wife may also proceed with an action at law for redress of any of his or her rights under the terms of this Agreement.

. . . . .

(c) It is specifically understood and agreed by the parties that in the event of a default under the terms of this Agreement, the non-defaulting party shall have the right to file a Petition for contempt and request such relief and remedies as authorized by law.

[Section 16] ENTIRE AGREEMENT, MERGER AND INTEGRATION

Husband and Wife do hereby covenant and warrant that this agreement contains all of the representations, promises and agreements made by either of them to the other for purposes set forth in the preamble hereinabove; that there are no claims, promises or representations not herein contained, either oral or written, which shall or may be charged or enforced or enforceable unless reduced to writing and signed by both of the parties hereto; and the waiver of any term, condition, clause or provision of this agreement shall in no way be deemed or considered a waiver of any other term, condition, clause or provision of this agreement.

[Section 17] INCORPORATION IN JUDGMENT FOR DIVORCE.

In the event either Husband or Wife at any time hereafter obtain a divorce in the cause presently or hereafter pending between them, this Agreement and all of its provisions shall be incorporated into any such judgment for divorce, either directly or by reference. This Agreement, upon incorporation, shall not merge into the decree, but shall remain in full force and effect. The court on entry of the judgment for divorce shall retain the right to enforce the provisions and the terms of the Agreement.

[Section 18] AGREEMENT TO CONTINUE IN EVENT OF DIVORCE

This Agreement shall remain in full force and effect unless and until it is terminated either by mutual written consent of both parties, or to the extent it is appropriately terminated by the death of either party under the terms of this Agreement. ...

On July 17, 1984, wife filed for divorce. On October 16, 1984, wife instituted an action in equity for specific performance of the agreement, alleging that husband had paid only $400 per week for several months. On March 27, 1985, the trial court ordered husband to comply with the agreement *in toto* and later denied husband's exceptions to that order. Husband appeals this order in appeal number 2259 PHL 1985.

Husband thereafter continued to refuse to pay the full $800 to which he had agreed. Thus, wife filed a petition for contempt on April 18, 1985. On October 24, 1985, the court found husband in contempt of the March 27, 1985 order, ordered him to pay what then amounted to almost $29,000 in child support arrearages and $1,000 for wife's counsel fees and costs, and ordered him to comply in future with his obligations under the agreement. Husband appeals this order in appeal number 3025 PHL 1985.

On December 13, 1985, the parties were divorced by entry of a final decree of divorce. The decree specifically incorporated the agreement in full into the decree, but provided that the agreement did not merge with the decree.

On January 3, 1986 wife filed a new petition for contempt. Husband replied by filing a petition to remit the arrearages under the agreement and to reduce his child support obligation thereunder from $800 per week to $400 per week.

On May 13, 1986, in the course of a hearing in this matter, the court orally denied husband's petition to remit arrearages and to modify the agreement. Husband appeals this order in appeal number 1423 PHL 1986.

In the course of the same hearing, the court again found husband in contempt and ordered him either to pay $10,000 against the then outstanding arrearages of almost $41,000 or be incarcerated. After several unsuccessful attempts by husband to stay the court's May 13th order of contempt, on May 21, 1986, the trial court entered a written order adjudging husband to be in contempt and ordering him to pay $10,000 forthwith or to be incarcerated every weekend until he purged himself of his contempt by paying the $10,000. Husband appeals this contempt adjudication in appeal number 1343 PHL 1986.

All of the foregoing appeals have been consolidated before this court.

The first two of husband's appeals may be summarily disposed of. Appeal number 2259, which is taken from the order declaring the agreement to be enforceable and ordering husband to comply, has been rendered moot by husband's later implicit recognition of the binding and enforceable nature of the agreement. It was husband who took pains to ensure that the divorce decree would provide for the incorporation of the agreement into the decree. In doing so, husband implicitly conceded that the agreement is valid and enforceable. Moreover, husband has not appealed from the divorce decree itself, into which the agreement was incorporated. Thus, the appeal from the trial court's determination that the agreement is an enforceable contract is moot and should be dismissed.

Appeal number 3025 is from the court's first order adjudging husband to be in contempt. This order is clearly

interlocutory in that an order adjudging someone in contempt without imposing any sanction therefor is not final. *McManus v. Chubb*, 342 Pa.Super. 405, 493 A.2d 84 (1985); *Hester v. Bagnato*, 292 Pa.Super. 322, 437 A.2d 66 (1981). The contempt order appealed from in this appeal did not impose sanctions on husband. It merely declared him in contempt and ordered him to comply with his obligations under his agreement. No fine or imprisonment was ordered. Thus, the order is interlocutory and the appeal must be quashed.

The remaining appeals, which raise issues of central importance, are not so easily resolved. The issues are: (a) where a property settlement/separation agreement is incorporated but not merged into a divorce decree, does the court have the power to modify the agreement; and (b) does the court have contempt powers, including incarceration, and other enforcement powers in the face of non-compliance with that agreement. In my view, these issues are inextricably intertwined. They both concern the effect of the incorporation without merger of a property settlement agreement into a divorce decree. As stated above, this is fundamentally a question of the power of the court vis-a-vis the obligations set forth in the agreement.

*—Modifiability—*

Although existing case law on this subject is not perfectly clear, in my view one basic and highly salutary proposition does emerge. To a large degree, our case law has made the resolution of the question of modifiability dependent on the intent of the parties to the agreement. Even the most cursory review of the applicable cases reveals this common thread.

In *Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981), the Supreme Court was asked to decide whether an agreement providing for child support, executed after entry of one support order, survived a subsequently entered support order for a lower amount. The court concentrated its analysis on ascertaining the intent of the parties. The *Brown* court engaged in a lengthy review of both the terms

of the agreement and the negotiations leading to it and concluded that there was no evidence that the parties intended that the agreement would simply merge with the existing support order and, therefore, be subject to modification by a later entered order. Instead, the court found evidence of the parties' intent to create a separate contractual support obligation, which the court held to be enforceable through an action in equity for specific performance.

*Brown* was followed by the decision of this court in *Millstein v. Millstein,* 311 Pa.Super. 495, 457 A.2d 1291 (1983), which raised a similar issue. Although both *Brown* and *Millstein* involved support orders and support agreements and did not involve divorce decrees and property settlement/support agreements, which are at the center of the instant case, both *Brown* and *Millstein* are nevertheless instructive. Once again, the question in *Millstein* involved the interplay of a support agreement and a support order. In *Millstein,* however, unlike in *Brown,* the support agreement had been executed before any support order had been entered. The court held this to be a distinction without a difference, holding that the analysis of *Brown* still applied. The intent of the parties would determine the impact of the subsequently entered support order on the existing support agreement. Since the *Millstein* court found no evidence that the parties intended a subsequent support order to override the agreement or to constitute a merger of the agreement into the order, the court held that the agreement survived the support order.

Importantly, the *Millstein* court reached this conclusion despite the fact that the agreement provided that upon the parties' divorce, the support obligation of the husband would be entered in the form of a court order. The court was not persuaded that this indicated an intent that the agreement itself would merge into any such order. Thus, the agreement was held to be a separately enforceable obligation, the significance being that the agreement is a private contract between the parties which the court cannot modify. The accepted exception to this proposition is that

the court, in adjudicating the agreement, can raise the level of child support, but not lower it, on the rationale that a parent cannot contract away the child's right to adequate support. *Brown,* 495 Pa. at 643 n. 11, 435 A.2d 859, 863 n. 11.

It was in 1984 that the first variation from the principles of *Brown* and *Millstein* appeared in the form of *Commonwealth ex rel. Tokach v. Tokach,* 326 Pa.Super. 359, 474 A.2d 41 (1984). Up to this point the intent of the parties controlled. In *Tokach,* the parties had entered into an agreement providing for child support prior to their divorce. The agreement itself appeared not to have mentioned anything regarding either the incorporation or merger of the agreement into the anticipated divorce decree. However, the divorce decree provided that the agreement was incorporated into the decree. There was no mention of merger into the decree. As we noted, a divorce decree was not implicated in *Brown* and *Millstein* while it was in *Tokach.*

The *Tokach* court held that there is no distinction between the incorporation of an agreement into a decree and its merger therein. In other words, the court ascribed to the parties the intent to merge their agreement into the decree simply from the use of the word "incorporate". Merger caused the agreement to be eliminated as a separately enforceable support obligation. The surviving order was in the form of a court order, the divorce decree, exposing the husband's support obligation to modification, whether by way of increase or decrease, upon a showing of changed circumstances.

Under the *Tokach* decision for the first time the intent of the parties did not control. By construing incorporation to equal merger, the incorporated agreement which was now viewed as also merged could not survive as an independently enforceable contract and could be modified by the court. Thus, *Tokach* simply enunciated a different rule applicable to divorce decrees. The law, thereby, evolved so that support agreements did not survive if they were incorporated into divorce decrees but that support agreements did

survive a support order if the parties so intended. *Mill-stein.*

Later decisions have limited the effect of *Tokach* and returned to the *Brown* and *Millstein* approach. For example, in *Madnick v. Madnick,* 339 Pa.Super. 130, 488 A.2d 344 (1985), the parties had agreed to the entry of a support order and then executed a separation agreement containing a support obligation identical to that in the order. The amount of support provided for in the order was later reduced by a further court order. Wife then attempted to enforce husband's obligation under the agreement. The trial court refused, finding the agreement merged into the order. This court reversed. The court returned to an analysis of the parties' intent as expressed in their agreement and concluded that the parties had clearly not intended the obligations expressed in the agreement to be merged into the order.

In so deciding, the court specifically distinguished *Tokach* as having involved a divorce decree as opposed to a support order. The court did not explain why this difference commanded a different result, other than to state that to construe *Tokach* as applying to support orders as well as divorce decrees would be to construe it as having overruled *Millstein.* This, of course, was beyond the power of the *Tokach* panel to do.

Presumably in reaction to the decision in *Tokach* or to similar decisions in cases decided in other jurisdictions, the language used in both separation or property settlement agreements and divorce decrees underwent a revision. The language used, at least by parties who were fortunate enough to be represented by attorneys who devoted themselves to weaving their way through the maze of precedent on this issue, became "incorporated but not merged". By using this language, it appears that parties have attempted to accomplish two distinct objectives.

First, by specifically eschewing merger, they attempted to ensure that their agreements and divorce decrees would be construed in the fashion dictated by *Brown* and *Mill-*

*stein.* In other words, they attempted to express, as clearly as possible, their *intent* that their agreements would survive their divorce and would continue as separately enforceable obligations. In so doing, they attempted to ensure that their contractual obligations survived and that those contractual obligations, with limited exceptions, could not be modified by action of the court.

Second, parties who agreed to incorporation without merger attempted to secure to themselves the availability of the court's special enforcement powers applicable to support orders. By agreeing that the agreement was to be incorporated in the decree, and then consenting to the entry of a decree that provided for such incorporation, the parties intended that in the event of a default under the agreement, remedies like contempt and attachment of wages would be available.

In 1987, this court addressed the first intended meaning of incorporation without merger and confirmed that the use of this language would in fact accomplish the parties' first goal. This language would serve to preserve the agreement and would put the support obligations contained therein beyond the reach of the court's modification powers. *McGough v. McGough,* 361 Pa.Super. 391, 522 A.2d 638 (1987). The only exception permitted was the situation noted in *Millstein,* i.e. where the best interests of the child required that the amount of support provided for in the agreement be increased. *Id.,* 361 Pa.Superior Ct. at 392–93 n. 1, 522 A.2d at 639 n. 1.

*McGough* is unquestionably a proper resolution. It follows precisely the mandate of *Brown* and *Millstein* and cases following *Tokach* by focussing on the language the parties themselves use to decide whether the agreement will survive and create an unmodifiable obligation or will cease to exist once a divorce decree is entered.

With the exception of modifying child support upwards, incorporation alone does not permit the court to alter the support terms of the private agreement entered into by the parties. If the parties wanted to permit the court to be able

to modify the terms of the agreement, then the agreement must clearly call for incorporation and merger. For example, a party with an insecure financial future may have desired a safety valve so that he or she could petition the court to reduce his or her support obligation. If that is the case, the party should have negotiated an agreement that is not only incorporated but merged.

Application of this principle in the present case requires that we affirm the trial court's refusal to remit the arrearages due under the Sonders' agreement or to reduce the amount of support payable by husband in future. Although in some situations the parties' intent may be difficult to ascertain, there is no doubt on the present record as to what the Sonders intended. Their intentions are clearly expressed in the agreement itself. They agreed to a weekly support payment of $800 per week. They prefaced their agreement with a statement indicating their intent that the agreement would be the final settlement of all financial matters between them. *See McGough* and *Madnick* (similar language considered evidence of intent that agreement would survive divorce decree and support order). They also provided repeatedly for the survival of the agreement in the event of divorce and indicated that it would not merge into the decree. The parties specifically acknowledged that this agreement was their entire agreement relating to the subject matter thereof. Lastly, they agreed that the agreement would continue in full force and effect unless terminated by the mutual written consent of both parties or by the death of one of them.

Moreover, after execution of the agreement, both parties consented to the entry of a divorce decree that excluded merger and neither party appealed that decree. It was not until wife attempted to have husband held in contempt for his willful refusal to pay that husband took the position that the agreement had in fact merged into the decree and that the court could therefore adjust husband's obligations thereunder.

I would categorically reject this belated attempt by husband to avoid the clear intent of the parties and I would affirm the trial court in appeal number 1423 PHL 1986.[3]

3. In Judge Wieand's Concurring and Dissenting Opinion he states that he would remand this matter for consideration of husband's Petition to Reduce and Remit his child support obligation because the Petition was never actually decided by the trial court. Judge Wieand opines that the trial court treated husband's Petition as if it were directed at the parties' agreement, which the court cannot modify, when in fact the Petition was directed at the aspect of the parties' divorce decree that incorporated the parties' agreement. Since the latter is a court order, Judge Wieand opines that it is modifiable upon a showing of changed circumstances. Thus, Judge Wieand would remand for a determination of whether husband's circumstances have changed, presumably since entry of the decree. Judge Wieand recognizes that this result is contrary to *Millstein* and would, therefore, overrule *Millstein*.

I find this view inconsistent not only with *Millstein*, but also with *Brown v. Hall*, by which this Court is bound. In *Brown*, the Court was reviewing two orders—one reducing husband's child support obligation under a court order that implemented the terms of the parties' agreement, and the other directing specific performance of the agreement. The court held that the agreement was fully enforceable and, as the *Millstein* court correctly stated, could not be reduced by a later entered court order. Thus, the court affirmed the order of specific performance and *vacated* the order reducing the previous support order which had reflected the parties' agreement. *Brown*, 495 Pa. at 643, 435 A.2d at 863. Justice Larsen dissented on precisely this point, stating that he would allow the reduced support order to stand, thus allowing the wife to proceed on it for the reduced amount and on the agreement for the balance. *Id.* (Larsen, J., dissenting). The significance of the disposition in *Brown*, on which Judge Wieand does not comment, is that where parties have an enforceable agreement for child support that survives a court order implementing that agreement, the court cannot later effectively reduce the support due under the agreement by reducing the support due under the order that implements the agreement.

Applying that rationale here, the trial court correctly held that it could not reduce husband's child support *obligation*, whether viewed as a reduction of the agreement itself or of the decree that incorporated it. If the trial court had held otherwise, it would have followed the rationale of the *Brown* dissent, but not of *Brown*. I would further note that this is precisely the resolution this court also adopted in *McGough*, where the court refused to modify a child support obligation arising under an agreement and a divorce decree incorporating but not merging that agreement. The court did not distinguish between modification of the obligation under the decree and under the agreement.

Nothing in the *Brown* opinion is contrary to this analysis. Judge Wieand correctly quotes the *Brown* Court as stating that it concurred "with the principle that parties to a divorce cannot restrict the court's

 

*—Enforceability—*

The last remaining issue, arising from husband's appeal from the trial court's May 1986 contempt orders, revolves around the effect of incorporation without merger on the means of enforcing support obligations arising from property settlement or separation agreements. Unfortunately, *McGough* leaves this question unanswered. That is, will an unmerged but incorporated agreement be enforceable through the use of civil contempt and incarceration as a sanction therefor? Does a court have the power to do what the trial court in the instant case did when confronted with a party who has steadfastly refused to pay the support due under an agreement incorporated into the divorce decree when the court has found that that party is able to pay, and has determined that the agreement is enforceable? Can the court adjudge that party to be in civil contempt and order him/her incarcerated until he/she purges?

power to modify a *support order* as facts, circumstances, and justice may require." *Id.*, 495 Pa. at 642–43, 435 A.2d at 862 (emphasis in original). However, in so stating the *Brown* court clearly was not referring to a support order that merely implemented the terms of the parties' agreement, as was the order before the *Brown* court. If the *Brown* court thought that such an order was modifiable, it would not have vacated the reduction of that order, because the trial court would have had the power to modify.

Finally, I would note that we have previously recognized this distinction between support orders reflecting the terms of private agreements and support orders separately entered after hearing, where no agreement is involved. In *Casper v. Casper,* 359 Pa.Super. 559, 519 A.2d 493 (1986), *allocatur denied,* 516 Pa. 631, 533 A.2d 90 (1987), we specifically stated "[o]ur courts have long recognized the difference between 'court ordered support' and orders which include the terms of a mutually agreed upon support agreement." *Id.,* 359 Pa.Superior Ct. at 562–63, 519 A.2d at 495. The difference we noted was that the former are modifiable and the latter are not. *Id.* Interestingly, in *Casper* we also noted that the major purpose of having an order implementing the agreement entered was to obtain the enhanced enforcement powers of the court as to the obligations expressed in the agreement. Thus, although the agreement is to be continued to be interpreted as a contract, and not modified upon a showing of changed circumstances, it could be enforced as a court order. *Id.,* 359 Pa.Superior Ct. at 563–65, 519 A.2d at 496–97. This is a subject which is discussed at greater length in the section of this opinion addressing enforceability, *infra.*

To my mind, the answer is clear. The court has the power to employ the full gamut of its civil contempt powers to enforce such incorporated agreements and should exercise these powers where, pursuant to the requirements of law for an adjudication of contempt, the trial court determines in its discretion that the situation merits this remedy. I find support for this view in the Divorce Code itself, as well as in the law of civil contempt.

I note preliminarily that in analyzing this issue in the context of the matter *sub judice*, we should not blind ourselves to the fact that the Sonders themselves expressly provided for the use of contempt in their agreement. These parties foresaw the possibility that the assistance of the court might be required in enforcing obligations under the agreement. To provide for this eventuality, they expressly agreed that in the event of a default, the non-defaulting party would have the right to proceed either with an action at law, an action in equity (for specific performance) or through filing a petition for contempt. The agreement, including these provisions, has already been held to be an enforceable contract, an order directing husband specifically to perform his obligations has been entered; and husband's appeal from these matters is moot. Thus, to the extent the parties' intent is relevant as to this issue, we should have no difficulty in finding that they intended to and did consent to the use of the court's contempt powers.

Turning to the applicable law, I find first that the Divorce Code itself addresses the enforcement of separation agreements through divorce decrees. Section 401(b) provides:

*Section 401. Decree of court.*

(b) Any decree granting a divorce or an annulment, shall include after a full hearing, where these matters are raised in the complaint, the answer or other petition, an order or orders determining and disposing of existing property rights and interests between the parties, custody and visitation rights, child support, alimony and any other related matters including the enforcement of separation agreements voluntarily entered into between the parties.

In the enforcement of the rights of any party to any such matters, the court shall have all necessary powers, including but not limited to, the power of contempt and the power to attach wages.

Pa.Stat.Ann. tit. 23 § 401(b) (Purdon Supp.1987).

Although this section does not directly address the imposition of civil contempt as a means of enforcing a support obligation arising under an agreement that has been incorporated but not merged into a divorce decree, the implication arising from Section 401(b) as to this quesion is clear. Through this section, the legislature has provided parties to divorce actions a method by which they can elevate their pre-divorce agreements beyond the level of a standard commercial contract, as to which enforcement is customarily limited to actions at law for breach and actions in equity for specific performance, followed by normal execution procedures. They can do so by securing, as part of the divorce decree, an order determining or disposing of the "enforcement of [their] separation agreements."

Therefore, the precise question before us is whether, where a court enters a divorce decree that provides for the incorporation but not the merger of an agreement, has the court thereby entered "an order ... [which provides for] ... the enforcement of separation agreements voluntarily entered into by the parties...." within the meaning of 401(b), and thus preserved to itself, under the last line of Section 401(b), the power of contempt, including incarceration, for later enforcement of the agreement.

Section 401(b) does not require that an agreement be merged into the decree for it to be enforced through contempt or wage attachment. It merely requires that the court enter, as part of the decree, an order which provides for enforcement of the agreement. Where as here, the decree states that the agreement is incorporated but not merged, and the parties' agreement also so provides, there is only one logical construction. The agreement is not merged, i.e. it survives. However, the decree does include the agreement because the agreement is incorporated there-

in. Thus, the agreement achieves the status of a decree of court and, under the specific language of Section 401(b), the court may employ "all necessary powers, including ...the power of contempt and ...to attach wages" to enforce the agreement. Under this clear language, the court may employ its full contempt power, including the power to incarcerate with the opportunity to purge in order to compel performance with the agreement, which is now included in the court's own decree.

The alternative to this view is the view that the only significance of incorporation without merger is that the agreement thereby attains res judicata effect, i.e. it is not subject to collateral attack as a contract. Under this view, the agreement would not be enforceable other than as any normal commercial contract. Underlying this view is a concern that to permit the court to use enhanced enforcement powers as to such an agreement would result in the court being compelled to enforce the agreement, as if it were the court's own order, despite the fact that the court would be powerless to review the fairness of the agreement's terms and modify them where necessary.

In fact, there need be no such concern for whether this approach will result in the enforcement of grossly unfair agreements which the court is powerless to modify so as to render them fair. Section 401(b) requires that provision for enforcement of such agreements be included in the decree only after a full hearing has been conducted, and requires that enforcement provisions in the decree relate only to agreements voluntarily entered into. Thus, there need be no concern that the court's contempt powers will be employed to enforce agreements that are so grossly unfair as to be unconscionable or that are otherwise unenforceable, i.e. on grounds of fraud, mistake or the like. Presumably, all such objections to the agreement will be fully aired and resolved in the "full hearing" that the Code requires. In the instant case, for example, the enforceability of this agreement and husband's ability to pay under it have been the subject of numerous hearings.

There is equally no difficulty arising from the fact that changes in circumstance between entry of the decree and the petition for contempt may render it inequitable for the court to enforce the agreement for the full amounts required thereunder. If such a situation would arise, the court could not grant the petition for contempt since the fundamental requirements of civil contempt, i.e. that the alleged contemnor has willfully failed to comply and is presently capable of paying the amount necessary to purge himself of his contempt, would not be fulfilled. Under such circumstances, a finding of contempt and certainly the imposition of the sanction of incarceration would constitute an abuse of discretion.

Perhaps the best indicator of the overall fairness of the approach I suggest is the fact that the legislature has recently amended the Divorce Code to allow for a similar result. Effective February 12, 1988, the Divorce Code was amended to include the following new provision:

Section 401.1. Effect of agreement between parties.

(a) A party to an agreement regarding matters within the jurisdiction of the court under this act, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this act to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

(b) A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances.

(c) In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony pendente lite, counsel fees or expenses shall not be subject to modification by the court.

Pa.Stat.Ann. tit. 23, § 401.1 (Purdon 1988). Further clarification of the powers of the court in enforcing such agreements is found in new section 401(k), which specifically

provides that where a party fails to comply with an agreement as entered into by the parties, after hearing, the court may find such party in civil contempt and may incarcerate him/her for up to six months. *Id.* § 401(k).

As to modifiability, Section 401.1 preserves to the court the ability to modify child support, visitation or custody, areas where the ability of the court to ensure that the child's best interests are served has always been regarded as being of paramount importance.

As to the remaining issues between the parties to a divorce, like property division and alimony, the court will not have the power to change the parties' agreements unless the parties specifically confer such power on the court.

As to enforcement of such agreements, regardless of whether the court can modify a particular aspect of an agreement or not, the agreement will be enforceable by all of the means available to a court in enforcing its own orders under the Divorce Code, including attachment of wages and civil contempt, unless the parties expressly agree that such enforcement powers will not be available in the event of a default under their agreement.

Thus, the legislature itself appears not to be concerned about the propriety of a court using its contempt powers, including incarceration where necessary, to enforce obligations pursuant to private agreements, even where certain terms of such agreements are not subject to modification by the court. Presumably, the legislature is content to rely, as am I, on the just and fair exercise of discretion by our trial courts in deciding when and if contempt and/or incarceration, is appropriate.

In addition to the foregoing analysis of the Divorce Code in support of the power of the court to employ civil contempt, including the sanction of incarceration, to force compliance with an agreement that is incorporated in a court decree, I also find support for the court's exercise of its contempt powers in this situation in the law of enforcement of support and contempt in general. Civil contempt is

generally a means of compelling performance with a court order or decree. *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977). Even prior to the enactment of the Divorce Code, the use of civil contempt, including the sanction of incarceration, to enforce support obligations under support orders was well-established. *Id.* Moreover, in 1984, this court confirmed the propriety of using civil contempt and the sanction of incarceration to enforce support obligations arising from private agreements that were incorporated into court decrees. *Hopkinson v. Hopkinson,* 323 Pa.Super. 404, 470 A.2d 981 (1984). In *Hopkinson,* we affirmed a trial court order finding a husband in contempt of his support obligation under a consent decree, which incorporated by reference the terms of the parties' support agreement, and directing that husband be incarcerated on weekends until he purged himself of his contempt. In doing so, we correctly stated:

> It is clear that the husband's flagrant and willful disregard of the lower court's orders in this matter, by his inaction in fulfilling his duties of support, justify his adjudication of contempt. So too, his imprisonment on weekends, until he purges himself of contempt, is a proper sanction to be imposed by the lower court for this civil contempt. To hold otherwise would render the Court of Common Pleas powerless to effectively implement its directives while, at the same time, allow the husband to escape his obligations under a valid, counselled separation agreement.

*Id.,* 323 Pa.Superior Ct. at 412, 470 A.2d at 985.

In the instant case, the trial court's use of civil contempt and incarceration was even more justified than the action of the court in *Hopkinson.* Here, the trial court's contempt adjudication was employed not only to compel performance of husband's obligations pursuant to his agreement, which was specifically incorporated into the divorce decree in a manner consistent with Section 401(b) of the Divorce Code, but also to compel performance with two of the court's own prior orders; one directing specific performance of the

agreement and the other finding husband in contempt and ordering him to pay accrued arrearages and make future payments. The use of the full gamut of contempt powers to enforce a support obligation under such circumstances is not only appropriate but is one of the most necessary and effective uses of contempt. Without it, the trial court is effectively powerless.

The majority would not only reject my analysis of the significance under the Divorce Code of incorporation without merger of an agreement, but would also reject *Hopkinson* as correct alternative authority for the use of civil contempt with incarceration to enforce a support agreement incorporated into a court decree. The majority would, in fact, overrule *Hopkinson*.

The majority's primary difficulty with the *Hopkinson* decision is apparently not that the court affirmed a finding of civil contempt, but that the court also affirmed the incarceration of the appellant until he had purged himself. The majority objects to this aspect of *Hopkinson* on the basis of *Colburn v. Colburn*, 279 Pa. 249, 123 A. 775 (1924). The majority construes *Colburn* as a determination by the Supreme Court that a court of equity lacks the power to incarcerate for failure to comply with an order directing specific performance of a separation agreement providing for support payments and thus as a bar to the incarceration approved in *Hopkinson*. The majority notes that *Colburn* was decided under the Act of July 12, 1842, P.L. 339. Although the majority recognizes that the Act of July 12, 1842 was repealed by the Judiciary Act Repealer Act in 1978, the majority states that *Colburn* nevertheless has continuing vitality under present statutory law, namely Section 5108(a) of Title 42, which the majority believes to be a substantial reenactment of the Act of July 12, 1842. The majority also cites to *Silvestri v. Slatowski*, 423 Pa. 468, 224 A.2d 212 (1966) and *Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 253 A.2d 263 (1977) as examples of cases where the Supreme Court has more recently declined to modify the holding of *Colburn*.

I disagree with the majority's characterization of the holding in *Colburn,* with its analysis of the statutory basis underlying *Colburn* and with its application of *Colburn* to the instant case. There is a major distinction between the instant case and *Hopkinson,* on the one hand, and *Colburn* on the other. In both this case and *Hopkinson,* the issue is whether a court may impose the sanction of incarceration to enforce support obligations arising under a separation agreement which has been ordered specifically performed and has been incorporated into a decree of the court when the court finds the defaulting party in civil contempt. In *Colburn,* the separation agreement was not incorporated in any decree and there is no discussion of the court's powers upon finding contempt, whether civil or criminal, because there was no finding of contempt. If in fact the lower court in *Colburn* had found the husband in contempt, presumably the majority would agree that the court had the power to do so, since the majority says that it agrees with the *Hopkinson* lower court's finding of contempt and only disagrees with its use of incarceration with a purge as a sanction for the contempt.

*Colburn* involved only a separation agreement providing for support, as to which the wife had obtained an order of specific performance. When husband still did not pay, wife "petition[ed] for [husband's] attachment." *Colburn,* 279 Pa. at 250, 123 A. at 776. The trial court refused. Thus, on appeal, the sole issue was whether, where a court of equity had ordered that a separation agreement be specifically performed, that court could then enforce its order by issuing a writ of attachment for the arrest of the defaulting party. The Supreme Court affirmed the trial court's refusal to attach the husband under the Act of July 12, 1842, which prohibited arrest or imprisonment of any person through the civil process of a court in any proceeding instituted for the recovery of money due on any judgment or decree founded upon a contract. Perhaps this is why the *Hopkinson* court, which was reviewing a civil contempt adjudication directed at enforcement of a court decree, did not discuss *Colburn. Colburn* is not directly apposite.

I also disagree with the majority's interpretation of the statute underlying *Colburn*, the Act of July 12, 1842, and of present statutory law. Neither the Act of July 12, 1842 nor present statutory provisions prohibit incarceration for civil contempt in a case like the one *sub judice*. The Act of July 12, 1842, codified at 12 P.S. § 257, prohibited only the arrest or imprisonment of a person in any suit for the recovery of money on a judgment or decree founded upon a contract. The statute does contain an exception to this rule, however, which the majority does not mention. The statute permitted arrest or imprisonment "in proceeding, as for contempt, to enforce civil remedies...." Since *Colburn* itself did not address such a contempt adjudication, the *Colburn* Court did not address this aspect of the statute.

Moreover, the Act of July 12, 1842 was repealed in 1978 by the Judiciary Act Repealer Act. The majority is not troubled by this fact because the majority would find that the Act was reenacted in Section 5108(a) of the Judiciary Code. 42 Pa.Cons.Stat.Ann. § 5108 (Purdon 1981). I find no support for this view.

Section 5108 is generally entitled "Imprisonment for debt." Subsection (a), quoted by the majority, is headed "constitutional restriction" and is no more than a repetition of our constitution's language on this subject, which does not refer to the exercise of a court's civil contempt powers. The Derivation Tables that accompany the Judiciary Act of 1976 and the Judiciary Act Repealer Act of 1978 specifically do not provide that Section 5108(a) is derived from any prior act. It would appear to be a new provision, deriving solely from the constitution itself.

Subsection (b) of Section 5108, not quoted by the majority, adds a "statutory restriction" on imprisonment for debt, and states that "except in an action for fines or penalties, or as punishment for contempt, or to prevent departures from the Commonwealth, a defendant may not be arrested in any civil matter." This section is derived from former Title 42, Section 832, not from the Act of July 12, 1842 which was considered in *Colburn*. In fact, the Disposition Tables

reveal that the portion of the Act of July 12, 1842 relied upon in *Colburn,* including the section excepting contempt proceedings, was disposed of in Section 1722(a) of the Judicial Code. This grants the Supreme Court the power to prescribe rules regarding, *inter alia,* the conduct of the courts and all officers serving process or enforcing court orders. It does not specifically address either contempt or imprisonment for debt.

Thus, I disagree that the Act of July 12, 1842, the sole basis for the holding in *Colburn,* has been specifically reenacted in present statutory law.

Finally, I reject the majority's assertion that either *Silvestri v. Slatowski* or *Commonwealth ex rel. Magaziner v. Magaziner* have any precedential value on this issue. In *Silvestri,* the court simply declined to consider this issue on the record before it. In *Magaziner,* the court disapproved the trial court's incarceration of a husband who had failed to allow his wife to enter his home to retrieve her belongings, although he had agreed to do so. The basis for the court's disapproval was that there was no court order of any kind addressing husband's obligation to allow his wife into the home, and moreover that the trial court had completely ignored applicable procedural requirements in attempting to have the husband arrested. In fact, the actual holding of *Magaziner* is that the case was moot because the trial court had already rescinded its order directing attachment of the husband. *Magaziner* is simply not precedential on the issue presented herein.

In sum, I do not find persuasive any of the majority's arguments in favor of the view that trial courts lack the power to incarcerate a party who has willfully refused to pay the support due under an agreement that has been incorporated in a court decree and ordered specifically performed, so long as the requirements for a finding of civil contempt and for imposition of incarceration with the possibility of purge are satisfied. Therefore, I conclude that *Hopkinson* was correctly decided and should continue to be applied.

The manner in which the trial court in the instant case exercised its contempt power provides a good example to other trial courts faced with similarly recalcitrant parties. The trial court held Dr. Sonder in civil contempt and ordered him incarcerated until he paid at least $10,000 of the $41,000 in support arrearages then due. This sanction was imposed, however, only after the trial court had separately determined that the agreement was a valid and binding contract, had ordered husband to comply, and had conducted two full hearings concerning husband's ability to pay the amounts due under the agreement. At the conclusion of the first hearing, in 1985, the court held husband in contempt but refrained from imposing any sanction, chosing instead to order husband once again to pay. It was only after this failed, and after the court held another hearing and received further testimony concerning husband's financial condition, that the court exercised its power to hold husband in contempt and order him incarcerated until he purged himself by paying the $10,000.

In reviewing the trial court's action, we have only one object—to ascertain whether the court erred by applying the wrong legal standard or abused its discretion by determining facts without the support of competent evidence of record. We must give great weight to the trial court's exercise of its discretion. *Commonwealth v. Hawkins*, 322 Pa.Super. 199, 469 A.2d 252 (1983). Here, there has clearly been no error. The court simply found the wife's evidence credible and disbelieved the husband's. In fact, three different trial court judges came to the same conclusion regarding this matter. Since it is beyond question that we, as an appellate court, do not have the power to reverse the trial court where its determination is based upon its assessment of the credibility of witnesses, I find no basis upon which to reverse the trial court's contempt adjudication nor its decision that husband should be incarcerated until he purged himself of his contempt.

I would affirm the order of the trial court in appeal number 1343 Phl 1986.

In sum, I would dispose of these consolidated appeals as follows:

Appeal No. 2259 Phl 1985 Dismiss.

Appeal No. 3025 Phl 1985 Quash.

Appeal No. 1423 Phl 1986 Affirm.

Appeal No. 1343 Phl 1986 Affirm.