## Kress v. Kingsbury

C.P. of Centre County, no. 1998-382-S.

*Mark S. Weaver,* for plaintiff.
*Philip M. Kingsbury,* pro se.

GRINE, *J.,* May 27, 2005—Plaintiff, Alexandra S. Kress, and defendant, Philip Kingsbury, are before this court on plaintiff's demand for a hearing following the entry of a modified support order entered on March 31, 2005, and filed for the record on April 6, 2005. The modified order requires defendant to pay $565 per month to plaintiff for the support of one minor child, effective as of February 28, 2005. Defendant was assessed $399.42 in arrears. In her demand for hearing, plaintiff asserted three objections to the order: (1) that the order did not include psychological or psychiatric expenses incurred by the minor child; (2) past psychological or psychiatric expenses incurred by the minor child were not included in the order; and (3) "defendant failed to show a significant change in circumstances warranting a reduction in amount of unreimbursed medical expenses paid by the defendant as agreed upon by the parties in their divorce settlement agreement."

This court heard the arguments of plaintiff and defendant in a hearing de novo on May 20, 2005. This court has also reviewed the case file maintained by Centre County Domestic Relations Services and has determined that defendant should not be solely responsible for the unreimbursed psychological and psychiatric expenses incurred by the minor child and affirms the March 31, 2005 order.

## PRELIMINARY DISCUSSION

The parties were married on July 12, 1985. During the marriage the parties had one child. On September 9, 1988,

a complaint in divorce was filed by plaintiff. A final decree in divorce was signed by the Honorable Charles C. Brown Jr. on June 5, 1989. Part of the divorce decree included a settlement agreement signed by the parties on May 23, 1987. The agreement sufficiently addressed and disposed of all issues relating to the dissolution of the marriage including child support and custody issues, going so far as to state that defendant would maintain the minor child on his medical insurance as well as be responsible for any unreimbursed medical expenses. The agreement was incorporated into the decree in divorce via a request to incorporate agreement signed by the parties on May 23, 1989. The request to incorporate agreement only sought to incorporate the agreement and made no mention of merging the agreement into the final divorce decree.

Beginning in the fall of 1998, plaintiff took the parties' minor child to be evaluated by William J. Tolan Ph.D., a pediatric psychologist, concerning learning and adjustment issues. The child has continued to meet with Dr. Tolan consistently and within the last two years has seen him on a regular bimonthly basis. The child is also receiving treatment from Dr. John Boswell, a psychiatrist. It is Dr. Boswell who oversees the administration and monitoring of the child's medication. Defendant has never agreed with the course of treatment provided to the child, and has questioned its necessity. Plaintiff, however, insists that the treatment is necessary and wishes to maintain the treatment.

In addition to the incorporated settlement agreement, a separate support order was entered through Centre County Domestic Relations Services on June 23, 1989. The support order entered June 23, 1989, ordered defen-

dant to pay a sum of $303.60 per month in child support. Defendant was also assessed at that time with an arrearage balance of $1,957.08 and was ordered to pay an additional $10 per month towards that balance. The support order made no mention of medical expenses and was reflected in the parties' settlement agreement.

On February 23, 2005, defendant contacted domestic relations regarding the expenses associated with the child's psychological and psychiatric treatments. He indicated that his insurance was covering a portion of the expenses, and, as per the settlement agreement provision, plaintiff instructed the psychology group to forward any unreimbursed costs to him. The cost of some of these bills exceeded $1,000. The domestic relations enforcement officer informed defendant that, pursuant to domestic relations policy, he was not responsible to pay those bills.[1] Upon learning that domestic relations did not consider him responsible for those unreimbursed medical expenses, defendant requested the facility to submit all bills to plaintiff.[2]

Plaintiff filed the petition to modify on February 28, 2005, seeking a modification of the monthly child support obligation and the inclusion of a provision requiring defendant to pay the psychological and psychiatric expenses incurred by the minor child. The modified or-

1. Pursuant to domestic relations policy effective April 1, 1999, "medical expenses" subject to enforcement by a domestic relations support order "*do not include* cosmetic, chiropractic, psychiatric or psychological services unless specifically directed in the order of court." (emphasis in original)

2. The psychology group from which the child continues to receive treatment has continued to bill defendant's insurance for the services provided to the child. The unreimbursed expenses have been sent to plaintiff.

der entered following a support conference did not include the requested provision regarding medical expenses, and plaintiff objects to its exclusion.

## DISCUSSION

Plaintiff's contention that defendant is responsible for all unreimbursed medical expenses for the child is based on paragraph 9 of their settlement agreement. Paragraph 9 states:

"Husband hereby agrees to provide through the military, as long as he shall be enlisted, dental and medical coverage for the parties' minor child. Husband hereby agrees to cooperate in the providing of a dependent I.D. card for said child. Furthermore, Husband shall be responsible for payment of the deductible in any unreimbursed medical expenses the child may incur. Wife hereby agrees to submit said bills showing those expenses which remain unreimbursed and it shall be the Husband's duty to pay the same. In the event that Husband does not reenlist in a branch of the armed services, then Husband shall be responsible for providing and maintaining insurance, to include dental and medical, on said child. Furthermore, Husband shall be responsible for payment of the necessary deductible amount to activate said insurance for the child. In addition, Husband shall be responsible for any unreimbursed medical expenses the child may incur. It is understood by the parties that, if by virtue of Wife's employment a policy of insurance is available through her employer that would cover said child automatically or for a nominal sum, Wife shall hereby be required to insure said child under said policy. In the event that Wife obtains insurance to cover said child, Husband shall be required to maintain separate

insurance on the child, and parties hereby agree to cooperate in coordinating the benefits of each individual policy."

As noted *supra,* this settlement agreement was incorporated but not merged into the final divorce decree. This distinction is critical in the determination of precisely how this provision is to be enforced. Courts of this Commonwealth have recognized a distinction between support orders and support agreements. Support orders are created by statute and are enforceable by operation of law. *Sonder v. Sonder,* 378 Pa. Super. 474, 549 A.2d 155 (1988), citing *Commonwealth ex rel. Smith v. Smith,* 260 Pa. Super. 203, 393 A.2d 1224 (1978). These orders are entered only after an evidentiary finding and scrutiny by the court as to their validity, and are subject to appellate review. "In return for this closely proscribed legal proceeding with its attendant safeguards and judicial findings, the legislature has extended the powers to bring about compliance by granting courts the right to attach property and wages and to incarcerate willfully delinquent obligors." *Id.* at 487-88, 549 A.2d at 162. Additionally, courts have the ability to modify a support order or even vacate an arrearage balance upon a showing of changed circumstances. *Id.*

Support agreements are an entirely different venue. They are "instruments of contract" in which a court has no involvement in their inception or formulation. "None of the elements of due process, court review and appealability are involved ... [these] are private undertakings between two parties, each having responded to the 'give and take' of negotiations and bargained consideration. . . . they are governed by the law of contracts." *Id.* at 488, 549 A.2d at 162. (citations omitted) As such, a court can-

not alter the agreement, for to do so would violate one, if not all, parties' due process rights. Thus, a court cannot enforce a support agreement as it would enforce a support order.

Because support agreements are viewed under contract law, their inception and enforcement in the divorce context is tenuous. Presumably the parties to a support agreement are dividing up the assets and debts of their marriage in order to legally go their separate ways and no longer be bound to the other. The eventual divorce decree and change in legal status from "married" to "single" is the consideration for the give and take associated with dividing up the aspects of a marriage. For instance, the desire to be divorced may influence one party's ceasing to insist on keeping a piece of furniture or the other's agreeing to pay a certain amount of money per month in support. Thus, once the final decree is entered, the "contract" arguably is fulfilled. However, support agreements often contain provisions for ongoing assistance for one party by the other, such as alimony, making it necessary to have some mechanism to enforce the agreement once the divorce is final. The mechanism is known as incorporation. By incorporating a support agreement into a divorce decree, the agreement "survives" the divorce such that in the event of one party's breaching the agreement, the injured party is left with a method in which to seek relief—a civil action in equity seeking specific performance. See *e.g., Sonder v. Sonder,* 378 Pa. Super. 474, 549 A.2d 155 (1988); *Knorr v. Knorr,* 527 Pa. 83, 588 A.2d 503 (1991); *Hanson v. Hanson,* 425 Pa. Super. 508, 625 A.2d 1212 (1993).

However, it is well-recognized that it is both quicker and easier for an injured party to obtain relief through a

court order. A violation of a support order results in almost immediate review before the court, and enforcement carries more severe penalties. Support agreements can be enforced as support orders but only if they are merged into the final divorce decree. If the agreement is merged, it takes on the enforceability available through a court order, but with the greater ease by which to enforce the order, comes the greater ease to modify the order. As such, the wishes of the specific parties to a support agreement determine whether an agreement is incorporated or merged. "[S]hould the parties desire to have the agreement inflexible and binding only as a contract, merger is not the proper procedure." 378 Pa. Super. at 494, 549 A.2d at 165. Likewise, if enforcement of exact terms is not as important as general enforcement, merger is the preferred procedure.

This court finds that the parties wished to keep the settlement agreement in the realm of contract law. First and foremost, the parties only sought to incorporate the agreement as evidenced by the request to incorporate agreement included in the final decree in divorce. Additionally, the settlement agreement recognized that the parties had reached "an amicable solution as to *all issues* which may arise pursuant to the Divorce Code." (emphasis added) The settlement agreement addresses not only equitable distribution issues, including personal property and motor vehicles, it also addresses alimony, debts, child support, counsel fees, child custody, and medical and dental insurance. This settlement agreement, therefore, can only be enforced as a contract and not as a support order.

Plaintiff is seeking enforcement of the provision regarding unreimbursed medical expenses since she has

asserted that, per the settlement agreement, defendant is responsible for all unreimbursed medical expenses. His decision to ultimately cease paying the unreimbursed psychological and psychiatric bills is a breach of that agreement. Plaintiff, in other words, wants to hold defendant to the exact terms of their agreement and must do so through contract law.

Plaintiff, however, has not sought to enforce this provision through contract law, but instead asks this court to enforce the provision through a support order, as evidenced in her objections to the modified order enumerated in her demand for a hearing. "In doing so, she has forsaken her contract right to sue, seeking the powers of the court for immediate relief." *Knorr v. Knorr,* 527 Pa. 83, 86, 588 A.2d 503, 505 (1991). In asking this court for the immediate relief available through a support order, plaintiff must realize that this court is not bound by the terms of the parties' settlement agreement relevant to unreimbursed medical expenses and can enter an appropriate order based on the facts of the situation. *Id.* The facts of the situation indicate to this court that, while the parties' minor son is most certainly in need of some form of psychological and/or psychiatric services, defendant should not bear the burden of these treatments single-handedly.

Since the parties' minor son began these treatments, defendant has been compelled to pay bills that have exceeded $1,000 per month on several occasions. Notes from the support conference that preceded this hearing indicate that defendant currently has over $35,000 in credit card debt, and a substantial portion of that debt can be attributed to an average monthly payment of $860 in unreimbursed medical bills. The hearing officer also

noted that defendant does not agree with this course of treatment for his son and questions the necessity of such treatment, but plaintiff continues to take her son to these treating therapists.

While defendant does have an obligation to support his minor child, this court cannot force defendant to make monumental sacrifices to the extent of near financial ruin in order to pay for a course of treatment with which he does not agree. See *Sanchez v. Sanchez,* 55 D.&C.4th 524 (Chester Cty. 2001). Though the settlement agreement makes no mention of joint legal custody, it has never been alleged by plaintiff or defendant that sole legal custody resides with plaintiff. This court will, accordingly, presume legal custody of the child is joint between the parties. Defendant, therefore, has the right to provide some input into the selection and determination of treating therapists and the course of treatment, and if plaintiff insists on pursuing a course of treatment over defendant's objections, the right to refuse to pay for the treatment. *Vender v. Luppold,* 33 D.&C.4th 186 (Berks Cty. 1996).

This court must make note of the fact that there is even an issue as to whether these unreimbursed medical expenses should even exist. A domestic relations enforcement officer informed plaintiff on March 31, 2005, that these expenses existed because, though plaintiff had coverage through the Department of Public Welfare, she refused to go through the proper channels and seek the services of an approved provider for the child. If plaintiff were to go through the proper channels, any services obtained for the child would be free. Though plaintiff asserted a "continunity of care" argument at the hearing, plaintiff has failed to show that she would be unable to obtain the same services from the same

providers if she utilized the services provided by the Department of Public Welfare. This court, therefore, must hold that defendant is not responsible for these unreimbursed medical expenses from the date that he first objected to them[3] and cannot be solely responsible for them in the future. *Id.* at 191.

It cannot be denied that this child is in need of some psychological and/or psychiatric treatment. However, the decision as to the precise course of treatment should be a decision made by both parents, taking into consideration the mental health needs of the child as well as the financial ability of each parent to pay for those expenses either through their insurance coverage or out-of-pocket.

With regard to the current support order, plaintiff received an overall increase in monthly child support payments of $261.40. This increase was based on the support guidelines. This court agrees with the calculations done by domestic relations and accordingly affirms the March 31, 2005 modified order of court.

The court enters the following order.

### ORDER

And now, May 27, 2005, after a hearing on the matter, it is hereby ordered and decreed that the March 31, 2005 modified order of court increasing defendant's monthly child support obligation from $303.60 to $565 is affirmed.

---

3. The first mention of defendant's objecting to this course of treatment was in February 2005, which was the point in time when he ceased paying the unreimbursed portion of the bills. This court, accordingly finds the date of first objection to be February 23, 2005, so no past credit is due to defendant for the prior years of treatment.

It is further ordered and decreed that defendant shall not be responsible for the unreimbursed medical expenses as billed by Scenery Park Psychology Group for the treatment of the parties' minor child as of February 23, 2005. Defendant owes no payments toward services provided for the minor child that may be currently outstanding.

Any future unreimbursed medical expenses shall be handled pursuant to the domestic relations policy pertaining to the collection of unreimbursed medical expenses.

This decision pertains solely to the provision contained in the 1989 settlement agreement relating to unreimbursed medical expenses and in no way alters the remaining terms and conditions of the agreement. All remaining provisions of that agreement remain enforceable through contract law by virtue of paragraph 16 of the agreement relating to severability and enforceability.